FEDERAL TRADE COMMISSION, Petitioner,

v.

Donald P. CARTER et al., Respondents.

Misc. No. 77–0168.

United States District Court, District of Columbia.

Jan. 25, 1979.

Gerald P. Norton, Deputy Gen. Counsel and Arthur W. Adelberg, Federal Trade Commission, Washington, D. C., for petitioner.

Martin London, Paul, Weiss, Rifkind, Wharton & Garrison, New York City, Harold D. Murry, Jr., Clifford, Glass, McIlwain & Finney, Lawrence G. Meyer, Patton, Boggs & Blow, Herbert Dym, Covington & Burling, Abe Krash and Douglas Dworkin, Arnold & Porter, Washington, D. C., Edwin J. Jacob and Janet S. McClendon, Jacob & Medinger, Charles K. O'Neill and Daniel J. O'Neill, Chadbourne, Parke, Whiteside & Wolff, Irving Scher, Weil, Gotshal & Manges, Eugene R. Anderson, Anderson, Russell, Kill & Olick, P. C., New York City, for respondents.

## MEMORANDUM OPINION

BARRINGTON D. PARKER, District Judge:

The Federal Trade Commission (FTC or Commission) brings this summary proceeding pursuant to § 9 of the Federal Trade Commission Act (Act), 15 U.S.C. § 49. The FTC petitions for enforcement of 28 subpoenas *duces tecum* issued to 56 respondents, including the six major American cigarette manufacturers, their advertising agencies, two tobacco research corporations,

and the chief executive officers of each,[1] all in connection with an industry-wide pre-complaint investigation of cigarette advertising and promotion.

Regarding this investigation as preparatory to the alleged Commission goal of banning all cigarette advertising, the respondents oppose the petition on both procedural and substantive grounds. They have filed a virtual battery of objections, transforming this summary matter into another of a long series of proceedings seeking to restrict the FTC's investigatory efforts.

Recent cases have been resolved by this Circuit uniformly in favor of the Commission. *See e. g., SEC v. Arthur Young & Co.,* 190 U.S.App.D.C. 37, 584 F.2d 1018 (1978), *cert. denied,* —— U.S. ——, 99 S.Ct. 841, 59 L.Ed.2d 37 (1979); *In re: FTC Line of Business Report Litigation,* 193 U.S.App.D.C. ——, 595 F.2d 685 (1978); *FTC v. Texaco, Inc.,* 180 U.S.App.D.C. 390, 555 F.2d 862 (1977), *cert. denied,* 431 U.S. 974, 97 S.Ct. 2940, 53 L.Ed.2d 1072 (1977). Applying these clear precedents to the particular facts of this litigation, the Court denies the respondents' procedural objections and will enter an order enforcing the subpoenas in their entirety.

## BACKGROUND

On May 11, 1976, the FTC authorized an investigation of the methods of advertising and promotion employed by the cigarette industry. The Resolution Directing Use of Compulsory Process in Nonpublic Investigation identifies the nature and scope of the investigation as follows:

> To fulfill its obligation to report to the Congress pursuant to Section 8(b) of the Federal Cigarette Labeling and Advertising Act, as amended,[2] and to gather and compile information make reports to the Congress as authorized by Section 6 of the Federal Trade Commission Act; [3] and to determine whether persons, partnerships, or corporations engaged in the manufacture, advertising, promotion, offering for sale, sale, or distribution of cigarettes may have been or may be engaged in the use of unfair or deceptive acts or practices, in or affecting commerce; in the advertising, promotion, offering for sale, sale, or distribution of cigarettes in violation of Section 5 of the Federal Trade Commission Act.[4] (Footnotes added.)

As authority for the investigation, the Commission depends on §§ 6, 9, and 10 of the Act, 15 U.S.C. §§ 46, 49, 50; and FTC Procedures and Rules of Practice, 16 C.F.R. § 1.1 *et seq.*

On May 12, the Commission issued the 28 subpoenas at issue here. The subpoenas, as modified following discussion between the parties, require production of documents or, in some instances, verified written statements, relating to: 1) respondents' corporate organization and structure; 2) information prepared by or for respondents since January 1, 1964, concerning "consumers' or

---

1. The cigarette manufacturers are: American Brands, Inc.; R. J. Reynolds Tobacco Company, Inc.; Loew's Theatres, Inc.; Brown & Williamson Tobacco Corporation; Philip Morris, Inc.; and Liggett Group, Inc. The research corporations are the Tobacco Institute, Inc. and the Council for Tobacco Research—U. S. A., Inc.

2. Section 8(b), 15 U.S.C. § 1337(b), provides in pertinent part that:
   > The Federal Trade Commission shall transmit a report to Congress not later than January 1, 1971, and annually thereafter, concerning (A) the effectiveness of cigarette labelling, (B) current practices and methods of cigarette advertising and promotion, and (C) such recommendations for legislation as it may deem appropriate.

3. The Commission shall also have power—
   > (a) To gather and compile information concerning, and to investigate from time to time the organization, business, conduct, practices, and management of any person, partnership, or corporation engaged in commerce . . . and its relation to other persons, partnerships, and corporations.

   > (f) and to make annual and special reports to the Congress and to submit therewith recommendations for additional legislation . . ..

4. "Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." 15 U.S.C. § 45(a)(1).

potential consumers' attitudes towards, beliefs about, perceptions or understanding of, or behavior relating to, cigarettes" and, since January 2, 1971, cigarette advertising; 3) cigarette advertisements prepared by or for respondents since January 2, 1971, whether or not disseminated.

In the fall of 1976, respondents moved to quash or limit the subpoenas, raising many of the objections raised in this proceeding, and requested a protective order to guard the confidentiality of the subpoenaed documents and data. On May 17, 1977, the Commission substantially denied the motion, rejected the protective order request, and ordered full compliance by June 27.

On June 24, 1977, respondents commenced an action against the FTC in the United States District Court for the Southern District of New York to declare the subpoenas invalid and enjoin enforcement. *American Brands, Inc. v. FTC,* 77 Civ. 3096. Later, on July 28, 1977, the Commission filed with this Court a Petition for Enforcement, and an order to show cause immediately followed. The New York action has been stayed pending termination of this proceeding.

## THE PROCEDURAL ISSUES

Initially before the Court are several procedural motions filed by respondents, including: 1) motion to transfer this proceeding to the Southern District of New York; 2) motion to dismiss the corporate officers as respondents; 3) motion to dismiss certain respondents for lack of *in personam* jurisdiction; 4) motion for limited discovery; and 5) motion to dismiss due to the failure of the FTC to comply with Rules 3, 4 and 13(a) of the Federal Rules of Civil Procedure. The Court will consider the motions seriatim, denying them all.

1. *Motion to Transfer Under § 1404(a)*

■ Section 1404(a) of Title 28, United States Code, provides:

For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

Respondents argue that since the majority of the companies involved here are based in New York and perform substantial amounts, if not all, of their business there, the "center of gravity" of this proceeding is the Southern District of New York. The FTC objects to transfer on several grounds.

The Court initially notes that in a summary proceeding such as this testimony from parties or witnesses is rarely necessary, *see* transcript of May 3, 1978, hearing at 44; *FTC v. MacArthur,* 532 F.2d 1135, 1141–43 (7th Cir. 1976). This of course eliminates a significant convenience factor involved in § 1404(a) determinations. In addition, enforcement proceedings normally require only the presence of counsel, due to the limited inquiry involved, *see FTC v. Texaco, Inc., supra* ; and, even if the convenience of counsel were a proper consideration, it would not weigh in favor of transfer in this proceeding, since counsel are in large part from this district.

A further and most important consideration is the additional delay attendant to transfer. Although this is a summary proceeding, it has been pending since July, 1977. Further delay, for whatever reason, must be supported by compelling reasons. Respondents present no such justification, and, in view of likely delay resulting from transfer to New York,[5] transfer of this matter is singularly inappropriate.

Respondents have failed to make a sufficient showing of inconvenience to parties or witnesses or that transfer would be in the interest of justice.

2. *Motion to Dismiss the Individual Respondents*

■ In seeking to dismiss the individual corporate officers as unnecessary parties to this proceeding, the respondents cite and rely on *FTC v. Texaco, Inc.,* Nos. 1089–73

---

5. *See FTC v. Rockefeller,* 441 F.Supp. 234 (S.D. N.Y.1977), a proceeding seeking to enforce subpoenas issued in 1975 still pending after transfer from District of Columbia.

through 1095–73 (D.D.C. August 14, 1973), *aff'd in part and rev'd in part on other grounds,* 180 U.S.App.D.C. 390, 555 F.2d 862, *cert. denied,* 431 U.S. 974, 97 S.Ct. 2940, 53 L.Ed.2d 1072 (1977). They contend that the Commission seeks documents, not testimony, and that therefore the subpoenas can be enforced fully without the individuals. The Commission, relying primarily on *FTC v. Anderson,* 442 F.Supp. 1118, 1128 (D.D.C. 1977), asserts that it has discretion in naming corporate officers in addition to the corporations, such practice being customary in industry-wide investigations. Additionally, the Commission points out that although testimony probably will not be required at the time of production, there may well be need for such by the officers at a later time.

Resolution of this issue depends on the particular circumstances involved. *Anderson,* 442 F.Supp. at 1128. Here, as in *Anderson,* while it appears that the Court could fully enforce the subpoenas without the individual respondents, in view of the breadth of this cigarette advertising investigation and the strong likelihood that testimony would be required, the Court determines that the Commission acted within its discretion in naming the individual corporate officers.

3. *Motion to Dismiss Certain Respondents for Lack of In Personam Jurisdiction*

■ Several of the respondents contend that they do not have sufficient "minimum contacts" with the District of Columbia to support personal jurisdiction here.[6] As the Commission points out, however, that principle is inapplicable to a proceeding such as this brought pursuant to congressionally authorized nationwide service of process. 15 U.S.C. § 49.

■ Certain respondents argue that they have not been properly served, and have submitted affidavits to that effect. The Commission argues, and the Court agrees,

that even if personal service was not effected, the proper course is to allow reservice *nunc pro tunc.* They do not argue that they did not receive actual notice, and they are otherwise proper parties.

4. *Motion for Limited Discovery*

■ Respondents request the opportunity to conduct discovery concerning: 1) the Commission's official resolution[7] authorizing the instant investigation; 2) the Commission's consideration of respondents' motion to quash the subpoenas, including alleged prior *ex parte* contact by the Commission staff; 3) prior breaches of confidentiality assurances by the Commission; and 4) the Commission's compliance, if any, with the Federal Reports Act, 44 U.S.C. §§ 3501 *et seq.*[8]

To warrant discovery in a summary subpoena enforcement proceeding respondents must make a strong showing of need. They have failed to make such a showing. First, any discovery purporting to determine the "actual" rather than expressed purpose behind the Commission's actions in authorizing and conducting the investigation would be useless, since the Court must look to the resolution and subpoenas as issued to determine the validity of the investigation. Further, since the Court views an enforcement proceeding *de novo,* information relating to alleged administrative improprieties is irrelevant to this proceeding.

Respondents claim a need for discovery concerning alleged prior breaches of confidentiality assurances by the Commission, contending that they then could demonstrate their need for a protective order preventing FTC disclosure of subpoenaed material. There is a substantial question whether such a protective order is ever appropriate at this stage in the proceedings, *see FTC v. Texaco, Inc.,* 180 U.S.App.D.C. at 411–13, 555 F.2d at 883–85, and thus the discovery requested can be rejected on that

6. The District of Columbia long-arm statute appears at D.C.Code § 13–423.

7. *See* p. 636, *supra.*

8. The Federal Reports Act controls, in general, the collection of information by federal agencies.

basis alone. More important, information as to prior instances in which the FTC has allegedly breached assurances hardly justifies the conclusion that it will do so in the present situation, especially when the agency has not yet had the opportunity to indicate what confidentiality protections it is willing to provide. *See id.*

The respondents' requested discovery concerning the Commission's compliance with the Federal Reports Act similarly must be denied. The law is clear that the Act is inapplicable to administrative subpoenas such as those involved here. *See* p. 642, infra.

5. *Motion to Dismiss for Failure to Comply with Federal Rules of Civil Procedure 3, 4 and 13(a)*

■ Respondents contend that the Commission improperly commenced this suit, since it did not file a complaint and issue a summons as required by Rules 3 and 4. They also argue that under Rule 13(a) the FTC was required to file this enforcement proceeding as a counterclaim to respondents' preenforcement injunctive action brought in New York. These objections are totally without merit. *In re FTC Corporate Patterns Report Litigation*, 432 F.Supp. 274 (D.D.C.1977), aff'd, *In re: FTC Line of Business Report Litigation*, 193 U.S.App. D.C. ——, 595 F.2d 685 (1978).

## THE MERITS OF ENFORCEMENT

The court's role in a proceeding to enforce an administrative subpoena is limited and compliance will be ordered if

> the inquiry is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant.

*United States v. Morton Salt Co.*, 338 U.S. 632, 652, 70 S.Ct. 357, 369, 94 L.Ed. 401 (1950); *SEC v. Arthur Young & Co.*, 584 F.2d at 1024. While the court's function is "neither minor nor ministerial," *Oklahoma Press Publishing Co. v. Walling*, 327 U.S. 186, 217 n. 57, 66 S.Ct. 494, 90 L.Ed. 614 (1946), the scope of the proceeding must be narrow given the important governmental interest in the expeditious investigation of possible unlawful activity. *In re: FTC Line of Business Report Litigation*, 193 U.S.App.D.C. at ——, 595 F.2d at 703; *FTC v. Texaco*, 180 U.S.App.D.C. at 400, 555 F.2d at 872.

The respondents contend that the FTC cannot even make the minimal showing of sufficiency of the petition for enforcement necessary to shift the burden of proof to them. *See United States v. Davey*, 543 F.2d 996, 1000 (2d Cir. 1976). They essentially object to the breadth of the investigation planned, accusing the Commission of launching a general inquiry into cigarette advertising, unrelated to allegedly deceptive practices or current methods of promotion, but rather aimed at an unconstitutional ban on all cigarette advertising. They label the subpoenas a "dragnet" for mostly irrelevant information that will take millions of dollars and thousands of hours to compile.

As with the procedural issues, the Court will address separately each substantive objection raised by the respondents.

1. *Statutory Authority and Definiteness*

■ As an initial matter, the respondents argue that the enabling resolution for the investigation is so vague and indefinite as to preclude a determination of whether the subpoenas fall within the Commission's statutory authority. The Court cannot accept this argument on its face, since the resolution specifically states three statutory purposes: to report to Congress under the Federal Cigarette Labeling and Advertising Act; to compile information and report to Congress under § 6 of the FTC Act; and to determine whether deceptive acts or practices are being used in cigarette promotion in violation of § 5 of the FTC Act.

■ Underlying this argument, however, is respondents' belief that the resolution does not cover the "actual" purposes of the investigation, i. e., eventually to ban cigarette advertising. Even assuming that this purpose is incompatible with those expressed in the resolution or unlawful, nei-

ther assumption being convincing to this Court, the resolution is still not fatally indefinite. The law in this jurisdiction is clear that an agency need not articulate its purpose with exact specificity or delineate the legal actions that an investigation may lead to. *FTC v. Texaco*, 180 U.S.App.D.C. at 400–01, 555 F.2d at 873–74 & n. 26. An investigation is just that and, like a grand jury, the agency

> can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not.

*Id.*, at 400, 555 F.2d at 872, *quoting United States v. Morton Salt Co.*, 338 U.S. at 642–43, 70 S.Ct. 357.

■ Whether the investigation, as defined, falls within the boundaries of the statutes enumerated is another issue, which the Court also resolves in favor of the Commission. Section 6 of the FTC Act and § 8(b) of the Cigarette Labeling Act plainly empower the Commission to gather information concerning the cigarette manufacturing and advertising businesses and report findings and legislative proposals to Congress. While the latter Act requires annual reports after January 1971, on the "current practices and methods of cigarette advertising and promotion," information as to past, present, and contemplated cigarette promotion could lead to legislative proposals for annual reports. And, agreeing with the FTC, the Court finds that a general inquiry into the evolution since 1964 of consumer attitudes and beliefs regarding smoking is relevant to current consumer perception of advertising. While the FTC has published several annual reports under the statute, without the benefit of an investigation into consumer attitudes, the Court cannot say that an unusually extensive report based on this investigation would be beyond the Commission's authority.

■ The respondents contend that there can be no § 5 violations here, because the Commission has recognized that adver-

tisements designed to overcome negative attitudes toward a product do not constitute unfair or deceptive trade practices. They also suggest that the investigation is barred under the doctrine of *res judicata* due to a 1972 consent order on cigarette health warnings. Both arguments are meritless, since the Commission is here exercising its power of original inquiry into unfair trade practices.

### 2. *Relevance*

■ The respondents challenge the relevancy of producing information as to consumer "attitudes and belief," undisseminated advertisements, the entire text of ads which are allegedly relevant only in part, and materials going back to 1964 and 1971. While both sides devote substantial argument to the relevancy issue, the Court has little difficulty in finding that the subpoenas meet the "reasonable relevance" standard of *Morton Salt.*

The Commission has responsibly determined that studies of consumer attitudes and beliefs cast light on the targets and effectiveness of cigarette advertising. Given the importance of intent under § 5, undisseminated advertisements may very well disclose a great deal about expected consumer impact of a promotion campaign. Appropriate documents should be submitted in their entirety to ensure comprehensibility, rather than being edited by respondents. Finally, the dates of 1964 for consumer attitude information and 1971 for advertising material are appropriate, since the former marks the Surgeon General's Report on the risks of smoking and the latter the commencement date of the FTC's responsibility to report to Congress on cigarette advertising.[9]

The respondents apparently, and erroneously, consider "reasonable relevance" to be related to possible legal outcomes of the investigation. At this pre-complaint stage, the relevance of the subpoena requests may

---

9. Respondents' objection to the choice of the 1971 date, on the ground that cigarette ads on radio and television have been banned since that date, is not persuasive. That ban applies only to broadcasts subject to FCC jurisdiction, and other types of broadcasts, such as closed circuit broadcasts before live audiences, are not covered. 15 U.S.C. § 1335.

be measured only against the general purposes of the investigation and the Court is not free to speculate about the possible charges that may be included in a future complaint, and then to determine the relevance of the subpoena requests by reference to those hypothetical charges. *FTC v. Texaco,* 180 U.S.App.D.C. at 402, 555 F.2d at 874. Nor does the ambitious scope of the subpoenas mean that they call for irrelevant documents, since the Court finds the investigative purposes and subpoena specifications well-matched. *See SEC v. Arthur Young, supra.*

The detailed pleadings filed by respondents obfuscate the obvious. The FTC is here investigating cigarette advertising. It is absolutely irrelevant that the FTC and other agencies have investigated and reported on smoking and its well-recognized hazards before. Whatever fruit this particular investigation will bear depends on the substance of the information produced in response to these subpoenas, which unquestionably seek relevant material.

### 3. *Burdensomeness*

▮ Having determined that this investigation is conducted pursuant to a lawful purpose and the requests are relevant to the objectives, the Court will assume reasonableness "absent a showing that compliance threatens to disrupt or unduly hinder the normal operations of a business." *In re: FTC Line of Business Cases,* 193 U.S.App.D.C. at ——, 595 F.2d at 703 (footnote omitted). The Court has considered the affidavits of respondents and finds that the respondent manufacturing and advertising corporations have not met the burden of proving that the subpoenas are unduly burdensome or unreasonably broad. *See Oklahoma Press Publishing Co. v. Walling,* 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614 (1946); *FTC v. Rockefeller,* 441 F.Supp. at 242. Assuming, for the sake of argument, "the accuracy of the most extravagant cost estimates," *In re: FTC Line of Business Cases,* —— U.S.App.D.C. at ——, 595 F.2d at 704, the costs of compliance are minor relative to the financial positions of these corporations and when measured against the public interest of this investigation. At any rate, the law is clear that expense alone does not constitute burdensomeness, where it is a concomitant of a broad, but valid, investigation. *FTC v. Texaco,* 180 U.S.App. D.C. at 410, 555 F.2d at 882.

The Court notes that the subpoenas have been tailored to minimize burden, for example by allowing respondents to substitute verified written statements for documents or to indicate documents already turned over to the Commission in other investigations. The FTC has further offered to coordinate subpoena returns and copy documents at the respondents' premises. At this stage, in recognition of the Commission's authority to require production of investigative material, the Court will not condition enforcement on such requirements. *See FTC v. Texaco,* 180 U.S.App. D.C. at 411, 555 F.2d at 883.

The two research corporation respondents, The Tobacco Institute, Inc. and The Council for Tobacco Research-USA, Inc., contend that the burden would be excessive as to them, since they are not involved in marketing or advertising of cigarettes, nor have they supported consumer preference or product-oriented research. The Commission argues that the relevant factor is not whether these research organizations engage in the activities under investigation, but whether they have any of the information requested which may be relevant. While there is logic in the FTC position here, the Court finds that it would "disrupt [and] unduly hinder the normal operations" of these research corporations to search all their files for subpoenaed materials that other respondents would be producing. *See In re: FTC Line of Business Cases,* 193 U.S.App.D.C. at ——, 595 F.2d at 703. Therefore, the Court will not enforce the subpoenas as to the two research corporations or their officials.

### 4. *First Amendment Issues*

▮ It is undisputed that advertising enjoys certain protections under the First Amendment. *Virginia State Board of*

*Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976). It is also undisputed that any Commission regulation of cigarette advertising which might result from this investigation will occur, if at all, in the future. At this pre-complaint stage, respondents' commercial speech is not susceptible to any unconstitutional "chilling effects" from the current investigation. *Id.* at 771–72 n. 24, 96 S.Ct. 1817; *see also Bates v. State Bar*, 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977). Accordingly, the Court finds that the First Amendment objections to the subpoenas are premature and lack merit. *See FTC v. Texaco*, 180 U.S.App.D.C. at 407, 555 F.2d at 879.

### 5. Federal Reports Act Violations

██ In agreement with the FTC position, the Court determines that the subpoenas do not violate the Federal Reports Act, 44 U.S.C. § 3512. The subpoenas are not requests for "information" as that term is defined in the Act, 44 U.S.C. § 3502. *FTC v. Rockefeller*, 441 F.Supp. at 242–43 & n. 13. The General Accounting Office, charged with implementation of the Act, has specifically exempted agency subpoenas from clearance procedures. 4 C.F.R. § 10.-6(c)(8) (1978). Respondents' arguments to the contrary are not persuasive.

### 6. Confidentiality

██ Claiming that the subpoenas require production of trade secrets and confidential commercial information on marketing strategies, the respondents request that their compliance be conditioned on protection against disclosure. They seek a protective order enjoining the Commission from disclosing confidential information to anyone outside the FTC, at least without affording them ten days advance notice.

The position cannot be reconciled with the law in this jurisdiction. *Exxon Corp. v. FTC*, 191 U.S.App.D.C. ——, 589 F.2d 582 (1978); *In re: FTC Line of Business Cases*, 193 U.S.App.D.C. ——, 595 F.2d 685, *supra.* A protective order is premature and improper

[a]t least until the subpoenaed information has been made available to the agency and it has had an opportunity to rule on specific requests for confidential treatment.

*FTC v. Texaco*, 180 U.S.App.D.C. at 412, 555 F.2d at 884. *See also FCC v. Schreiber*, 381 U.S. 279, 295–96, 85 S.Ct. 1459, 14 L.Ed.2d 383 (1965). While notice periods agreed to by the FTC have been approved as reasonable, this Circuit has specifically refused to adopt a notice period as a rule of general applicability. *FTC v. Texaco*, 180 U.S.App.D.C. at 412, 555 F.2d at 884 n. 64; *Exxon Corp. v. FTC*, 191 U.S.App.D.C. at ——, 589 F.2d at 588. In connection with this investigation of cigarette advertising, the Commission has represented that protective measures such as a notice period will be considered following production of the subpoenaed documents. *See* Commission Statement on the Motions to Quash or Limit, at 10. The Court assumes that the Commission has made this statement in good faith.

In an argument related to confidentiality, certain of the respondents have challenged enforcement against them because of possible Commission use of the subpoenaed documents in pending enforcement actions by the Commission. This claim does not relate to the subpoena enforcement petition before this Court or to the Commission's right to the documents at issue, but rather to abuse of the information in the other cases. Objections are properly made first in those proceedings. *In re: FTC Line of Business Cases*, 193 U.S.App.D.C. at ——, 595 F.2d at 708.

### CONCLUSION

Based on the foregoing, the Court concludes that the subpoenas *duces tecum* issued by the FTC here are reasonably relevant to its valid investigation of cigarette advertising and are not unduly burdensome, except against the two research organizations and their officials, and the Court will enforce them in all respects against all other respondents. The Commission shall present an appropriate order.