AUDUBON LIFE INSURANCE COMPA-
NY Commercial Securities
Company, Inc.

v.

FEDERAL TRADE COMMISSION, James C. Miller, III, Chairman, Michael Pertschuk, Commissioner, David A. Clanton, Commissioner, Patricia P. Bailey, Commissioner.

Civ. A. No. 81–952–B.

United States District Court,
M. D. Louisiana.

July 30, 1982.

---

Robert A. Hawthorne, Jr., Sanders, Downing, Kean & Cazedessus, Baton Rouge, La., Christopher Smith, Arent, Fox, Kintner, Plotkin & Kahn, Washington, D. C., for plaintiffs.

J. Paul McGrath, Asst. Atty. Gen., Washington, D. C., Stanford O. Bardwell, Jr., U. S. Atty., M. D. La., Baton Rouge, La., Sandra M. Schraibman and Surell Brady, Attorneys, Dept. of Justice, Washington, D. C., for defendants; John H. Carley, Gen. Counsel, Howard E. Shapiro, Deputy Gen. Counsel, Ernest J. Isenstadt, Acting Asst. Gen. Counsel, Leslie Rice Melman, Attorney, F. T. C., Washington, D. C., of counsel.

POLOZOLA, District Judge:

The circumstances giving rise to this action began in September, 1980, when the Federal Trade Commission (F.T.C.) adopted a resolution authorizing the use of compulsory process in a nonpublic investigation of the practices of certain finance companies and automobile dealerships. The resolution provided that the F. T. C. was to conduct an investigation to determine whether certain unnamed companies and dealerships were acting in violation of Section 5 of the F. T. C. Act (Act), 15 U.S.C. § 45, against unfair or deceptive practices. In particular, the investigation was directed at businesses which allegedly misrepresented that the purchase of credit insurance was a prerequisite to the extension of credit. After the F. T. C. formally initiated the investigation, a notice was sent to approximately 50 finance companies, including Commercial Securities Company, Inc. (Commercial Securities), one of the plaintiffs herein. This notice advised the companies that under Section 5(m)(1)(B) of the F. T. C. Act, 15 U.S.C. § 45(m)(1)(B), violators [1] of the Act are subjected to civil penalties of $10,000 per violation when the F. T. C. declares a practice to be deceptive or unfair, and issues a final cease and desist order. Accompanying the notices sent to the companies were copies of the statute and prior decisions issued by the F. T. C. which held that misrepresentations made by a business to prospective consumer borrowers that the purchase of credit life insurance is a prerequisite to the extension of credit violates Section 5 of the F. T. C. Act.

In May, 1981, the F. T. C. issued civil investigative demands (CID's) [2] to 43 fi-

---

1. A violator who has actual knowledge of an order issued by the F. T. C. declaring a practice to be deceptive or unfair is subject to civil penalties for a violation thereof whether or not the violator is a party to the cease and desist order.

2. Civil investigative demands are issued by the F. T. C. under Section 20(c)(1) of the F. T. C.

nance companies and automobile dealerships, including Commercial Securities, seeking documentary materials reflecting policies and procedures used by the businesses for the disclosure of the optional status of credit insurance in connection with the businesses' consumer finance activities. In June, 1981, Commercial Securities filed a petition with the F. T. C. to quash the CID. The F. T. C. denied both this petition and a motion by Commercial Securities for the F. T. C. to reconsider the denial of the petition. Subsequently, Commercial Securities refused to comply with the CID and has filed a suit in this court seeking injunctive and declaratory relief.

The plaintiffs in this case are Commercial Securities Company, Inc., a finance company, and Audubon Life Insurance Company (Audubon), a wholly owned subsidiary of Commercial Securities. Named as defendants are the F. T. C. and the individual Commissioners of the F. T. C.

The plaintiffs in this case seek a declaratory judgment declaring that the investigation being conducted by the F. T. C. is illegal. Plaintiffs also seek to have the investigation enjoined. The plaintiffs contend that the investigation being conducted by the F. T. C. is an investigation of the "business of insurance" under the McCarran-Ferguson Act, 15 U.S.C. §§ 1011 *et seq.*, and the Federal Trade Commission Act, 15 U.S.C. §§ 41 *et seq.* Thus, plaintiffs contend the F. T. C. is prohibited from conducting the investigation.

After this suit was filed, the plaintiffs filed a motion for summary judgment or, in the alternative, for a preliminary injunction. The defendants have filed a motion for summary judgment or, in the alternative, to dismiss.

Plaintiffs contend that the F. T. C. is prohibited from investigating the "business of insurance." Thus, plaintiffs argue that their summary judgment should be granted on the merits of this case. In the alternative, plaintiffs contend that the Court should grant a preliminary injunction enjoining the F. T. C. from conducting its investigation of plaintiffs' business practices. Plaintiffs also demand that the F. T. C. be ordered to file in a compulsory counterclaim such enforcement proceedings necessary to enforce the compulsory process issued by the F. T. C. to the plaintiffs in connection with the investigation.

The F. T. C. in its motion has requested that plaintiffs' suit be dismissed because the enforcement proceedings provided under the Federal Trade Commission Act give an adequate remedy at law to the plaintiffs. The F. T. C. further claims that the suit, as it now stands, is not ripe for adjudication. The F. T. C. also questions the standing of Audubon Life Insurance Company to bring this suit. Finally, the F. T. C. seeks summary judgment on the merits of the case.

■ The parties have filed excellent briefs with the Court in support of their respective contentions which the Court has carefully studied and compared with the Court's own independent research. After reviewing the entire record, the Court finds that plaintiffs' suit in this Court is premature because plaintiffs have an adequate remedy under the Federal Trade Commission Act. Since this case is not ripe for adjudication, defendants' motion to dismiss is hereby granted.[3]

---

Act, 15 U.S.C. § 57b 1(c)(1). The CID's require testimony, production of documents, reports, or answers to interrogatories, whenever the F. T. C. has reason to believe that the recipient may possess information relevant to unfair or deceptive practices. Section 20(e) of the Act, 15 U.S.C. § 57b–1(e) provides that if the CID is not complied with, the F. T. C. must file a petition in federal district court to have the demand enforced. § 57b–1(h) provides that district courts have jurisdiction to hear such proceedings and to issue final orders compelling compliance. Also, the court may pun-

ish noncompliance as contempt of court and the orders are appealable pursuant to 28 U.S.C. § 1291.

3. Because the court has granted defendants' motion to dismiss, it is unnecessary for the Court to consider defendants' contentions that Audubon Life Insurance Company lacks standing to sue and the motions for summary judgment filed by the plaintiffs and defendants seeking summary judgment on the merits of this case.

Section 2(b) of the McCarran-Ferguson Act, 15 U.S.C. § 1012(b), provides in pertinent part:[4]

No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically related to the business of insurance: *Provided*, that after June 30, 1948, * * * the Federal Trade Commission Act, as amended, shall be applicable to the business of insurance to the extent that such business is not regulated by State law.

In addition to this general restriction on the F. T. C., plaintiffs rely on Section 6 of the Federal Trade Commission Act, 15 U.S.C. § 46, which provides the source for the investigative power of the F. T. C. The extent of the investigative power set forth in Section 6 is broader than the regulatory power given to the agency in Section 5 of the Act. In 1980 this section was amended to specifically exclude from the scope of the F. T. C. authority the investigation of the

"business of insurance," except in instances when it is requested by Congressional committees to make studies or reports in this area.[5] Under these two provisions the plaintiffs contend that the F. T. C. lacks jurisdiction to investigate their business practices.

The right of judicial review of an action by an administrative agency is granted to persons adversely affected by the action in 5 U.S.C. §§ 701–706, enacted under the Administrative Procedure Act. Section 703 provides that the form of proceeding for judicial review is the special statutory review proceeding relevant to the subject matter unless none is provided for, or if that which is provided for would be inadequate. In such a case any applicable legal action, including actions for declaratory judgments or injunctive relief, may be brought in a court of competent jurisdiction.[6]

In addition to the limitations on judicial review set forth in 5 U.S.C. § 703, Section 704 further defines this limitation by stating:

**4.** On June 28, 1982 the United States Supreme Court rendered its decision in *Union Labor Life Ins. Co. v. Pireno,* U.S. ——, 102 S.Ct. 3002, 73 L.Ed.2d 647 (1982). The Supreme Court, following its earlier decision in *Group Life & Health Ins. Co. v. Royal Drug Co.,* 440 U.S. 205, 99 S.Ct. 1067, 59 L.Ed.2d 261 (1979) "identified three criteria relevant in determining whether a particular practice is part of the 'business of insurance'" exempted by Section 2(b) of the McCarran-Ferguson Act:

"*first,* whether the practice has the effect of transferring or spreading a policyholder's risk; *second,* whether the practice is an integral part of the policy relationship between the insurer and the insured; and *third,* whether the practice is limited to entities within the insurance industry." *Union Labor Life Ins. Co.,* · U.S. at ——, 102 S.Ct. at 3004.

Because of the Court's ruling in the case sub judice, it is not necessary for this Court to determine whether the "business of insurance" exemption is applicable under the facts of this case.

**5.** 15 U.S.C. § 46(h) as amended provides in pertinent part:

Nothing in this section (other than the provisions of clause (c) and clause (d)) shall apply to the business of insurance, except that the Commission shall have authority to conduct studies and prepare reports relating to the

business of insurance. The Commission may exercise such authority only upon receiving a request which is agreed to by a majority of the members of the Committee on Commerce, Science, and Transportation of the Senate or the Committee on Energy and Commerce of the House of Representatives. The authority to conduct any such study shall expire at the end of the Congress during which the request for such study was made.

**6.** 5 U.S.C. § 703 provides in full:

The form of proceeding for judicial review is the special statutory review proceeding relevant to the subject matter in a court specified by statute or, in the absence or inadequacy thereof, any applicable form of legal action, including actions for declaratory judgments or writs of prohibitory or mandatory injunction or habeas corpus, in a court of competent jurisdiction. If no special statutory review proceeding is applicable, the action for judicial review may be brought against the United States, the agency by its official title, or the appropriate officer. Except to the extent that prior, adequate, and exclusive opportunity for judicial review is provided by law, agency action is subject to judicial review in civil or criminal proceedings for judicial enforcement.

Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review ...

It thus appears that under the Administrative Procedure Act, in order for plaintiffs to maintain this action, not only must the initiation of the F. T. C. investigation and the issuance of the CID constitute "final agency action," but the judicial review provided for in the CID enforcement proceeding of 15 U.S.C. § 57b–1(e) and § 57b–1(h) must be an inadequate remedy for the plaintiffs. The plaintiffs have failed to make this requisite showing. Thus, their suit must be dismissed. In making this determination, the Court is bound by the decision rendered by the Fifth Circuit Court of Appeals in *Atlantic Richfield Co. v. FTC*, 546 F.2d 646 (5th Cir. 1977). In the *Atlantic Richfield* case, ARCO sued for both injunctive and declaratory relief in response to a subpoena duces tecum issued to it by the F. T. C. ARCO argued that any disclosure of the subpoenaed material to the F. T. C. staff involved in another adjudicatory proceeding pending against ARCO and other oil companies would violate ARCO's procedural rights to a fair hearing in violation of the Due Process Clause of the Constitution, as well as the Administrative Procedure Act. The Fifth Circuit held that the relief requested by ARCO was unavailable to ARCO because (1) ARCO had an adequate remedy at law under *Reisman v. Caplin*, 375 U.S. 440, 84 S.Ct. 508, 11 L.Ed.2d 459 (1964); and (2) the case was not ripe for adjudication under a trilogy of Supreme Court decisions, *Abbott Laboratories v. Gardner*, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967); *Toilet Goods Association v. Gardner*, 387 U.S. 158, 87 S.Ct. 1520, 18 L.Ed.2d 697 (1967); and *Gardner v. Toilet Goods Association*, 387 U.S. 167, 87 S.Ct. 1526, 18 L.Ed.2d 704 (1967).

The Court in *Atlantic Richfield* found that Reisman controlled its decision because in that case taxpayers were denied injunctive and declaratory relief where the I. R. S. issued an administrative summons directing the production of documentary materials from the taxpayers. Although the summons was challenged on several constitutional grounds, the Supreme Court found that pre-enforcement relief would be unwarranted. The statutory provision for judicial enforcement of the I. R. S. summons is essentially the same as the provisions for the enforcement of F. T. C. subpoenas under Section 9 of the F. T. C. Act, 15 U.S.C. § 49, and the F. T. C. CID's under 15 U.S.C. § 57b–1(e) and (h). These summonses, subpoenas, and CID's may only be enforced by a district court. Only a refusal to comply with an order of a district judge would subject the recipient to contempt proceedings. Under these circumstances, both the Supreme Court and the Fifth Circuit found that the statutory provisions allowing a party to challenge the action of the agency in the enforcement proceedings provided an adequate remedy at law so that injunctive and declaratory relief in advance of such proceedings would be improper. Thus, "where Congress has provided an adequate procedure for judicial review of administrative action, that procedure must be followed." *Atlantic Richfield*, supra, 546 F.2d at 649.

The plaintiffs in this case assert that they are entitled to preemptive relief despite the statutory remedy available in the enforcement proceeding because they are challenging the *jurisdiction* of the F. T. C. to conduct the investigation in question. This position is untenable. *F. T. C. v. Claire Furnace Co.*, 274 U.S. 160, 47 S.Ct. 553, 71 L.Ed. 978 (1927). In *Claire Furnace*[7] the

---

**7.** Although *Claire Furnace* was one of the earliest cases in this area and many cases have been decided since, its principles still govern cases such as the one at bar, as evidenced by the decisions rendered in *Reisman* and *Atlantic Richfield.* The Sixth Circuit in *American Motors Corp. v. F. T. C.*, 601 F.2d 1329 (1979), denied pre-enforcement injunctive and declara-

tory relief from an F. T. C. subpoena for this reason. The Sixth Circuit said that *Claire Furnace* "has never been overruled and it appears clearly to mandate the corporation's use of its defenses at any forthcoming FTC enforcement as its remedy." 601 F.2d at 1336. The Eighth Circuit also relied upon *Claire Furnace* in reaching the same result in *Anheuser-Busch,*

plaintiffs sought to have the F. T. C. enjoined from enforcing orders issued by the agency which commanded the plaintiffs to supply large quantities of information. The plaintiffs contended there, just as the plaintiffs do in this case, that the F. T. C. had no authority under Section 6 of the F. T. C. Act to investigate the matters under inquiry. The heart of the dispute in *Claire Furnace* centered upon the plaintiffs' contention that the information sought by the F. T. C. did not pertain to interstate commerce and, therefore, it was not subject to inquiry under Section 6 of the Act. The Supreme Court held that since the enforcement proceeding necessary to compel compliance provided plaintiffs with an adequate opportunity for adjudication of the F. T. C.'s jurisdiction, the pre-enforcement action should be dismissed.

Actually, in this case plaintiffs, Audubon and Commercial Securities, do not claim that they are unable to assert the alleged lack of jurisdiction in an enforcement proceeding. Nor do they dispute the numerous cases which indicate that when a subject is specifically exempted from the investigatory jurisdiction of the F. T. C. this lack of jurisdiction may be contested at a proceeding to obtain enforcement of compulsory

process issued in conjunction with that investigation.[8] Rather, they contend that in addition to this statutory remedy, they are also entitled to a preemptive attack upon the investigation. Despite ample authority indicating that the issue of investigatory jurisdiction may be raised in enforcement proceedings, the plaintiffs have cited no cases where an investigation has been blocked on this ground *prior* to such action by the agency. The whole of plaintiffs' argument rests upon the 1980 exemption of the business of insurance from the F. T. C.'s power under 15 U.S.C. § 46 and a Senate committee report expressing the intention that this jurisdictional issue receive the same judicial review accorded under decisions construing existing exemptions.

The 1980 legislation amending 15 U.S.C. § 46 did not create a new avenue of judicial review for F. T. C. actions. The amendment simply stated that the investigatory power given to the F. T. C. in that section would not apply to the business of insurance. Thus, if the F. T. C. were to disregard this limit on its authority, the legal remedy would be the same afforded persons aggrieved by other proscribed agency investigations. The language cited by plaintiffs from the report of the Senate Commerce,

---

*Inc. v. F. T. C.*, 359 F.2d 487 (8th Cir. 1966), which was authored by now Justice Blackmun. See also: *Casey v. F. T. C.*, 578 F.2d 793 (9th Cir. 1978). In the *Casey* case, as in *Atlantic Richfield*, an alternative ground for the denial of relief was the existence of an adequate remedy in the enforcement proceeding.

**8.** See, e.g., *United States v. Morton Salt Co.*, 338 U.S. 632, at 652, 70 S.Ct. 357, at 369, 94 L.Ed. 401. (In the context of F. T. C. enforcement proceedings the court recognized that "a governmental investigation into corporate matters may be of such a sweeping nature and so unrelated to the matter properly under inquiry as to exceed the investigatory power." In the enforcement proceedings the court's scrutiny extends to whether "the inquiry is within the authority of the agency"); *Oklahoma Press Pub. Co. v. Walling*, 327 U.S. 186 at 209, 66 S.Ct. 494, at 505, 90 L.Ed. 614 (1946), (enforcement of subpoena issued by administrator under Fair Labor Standards Act enforced if "the investigation be for a lawfully authorized purpose"); *F. T. C. v. Miller*, 549 F.2d 452 (7th Cir. 1977) (refusal by court to enforce F. T. C. subpoena issued to "common carrier" exempt

from F. T. C. investigatory jurisdiction under Section 6 of the F. T. C. Act); *F. T. C. v. Winters National Bank*, 601 F.2d 395 (6th Cir. 1979) at 401–402, n.14, (if subpoena were issued pursuant to investigation of bank exempted from investigation under Section 6 of F. T. C. Act, court could not enforce it); *Appeal of F. T. C. Line of Business Report Litigation*, 595 F.2d 685 (D.C.Cir.1978) at 703, (F. T. C. investigatory order to be enforced if "it does not transcend the agency's investigatory power, the demand is not unduly burdensome or too indefinite, and the information sought is reasonably relevant"); *Federal Election Com'n. v. Machinists Nonpartisan*, 655 F.2d 380 (D.C.Cir. 1981) (before court could enforce F. E. C. subpoena it was required to assure itself of F. E. C.'s investigatory jurisdiction with respect to the subject matter of the subpoena; *United States v. Anaconda Co.*, 445 F.Supp. 486 (D.D.C.1977) at 491, n.4, (lack of investigatory jurisdiction of Consumer Product Safety Commission properly raised in subpoena enforcement proceeding where statute specifically limited this jurisdiction.)

Science and Transportation Committee merely restates this proposition. In its report the Committee stated:

The amendment contemplates that, in determining what lies within the "business of insurance" the FTI (sic) will adhere to the judicial precedents. However, the Committee also recognizes that reasonable differences of opinion may exist with regard to whether certain peripheral activities of insurance companies or agents are the "business of insurance." The amendment is thus *intended to permit judicial review on jurisdictional questions as now permitted under the court decisions construing the existing exemptions from section 6.* See e.g., *FTC. v. Miller,* 549 F.2d 452 (7th Cir. 1977). (Emphasis supplied.)

Senate Report No. 96–500, 1980 U.S.Code Cong. and Adm.News, p. 1102 at p. 1117.

As previously noted, the courts have allowed exemptions to be raised as jurisdictional bars in enforcement proceedings, but where these exemptions have been relied upon to acquire preemptive relief, the courts have refused to grant it.

Apart from its reliance on the holding of *Reisman v. Caplin,* supra, the analysis made by the Fifth Circuit in *Atlantic Richfield* also resulted in dismissal because the plaintiffs failed to establish a present need for relief under the *Abbott Laboratories* trilogy of Supreme Court decisions. In the case at bar, the plaintiffs likewise have failed to establish a present need for relief. Consequently, based on the *Abbott Laboratories* trilogy, this case is not ripe for judicial review.

Plaintiffs also contend that the very existence of the F. T. C. investigation causes them irreparable harm. They point to their expenses resulting from their legal battle in contesting the investigation as the harm which it imposes. Plaintiffs also allege that the fact that they are being investigated by the F. T. C. for possible unfair or deceptive practices will injure their business reputation and the good will of the public towards them. Plaintiffs' argument is not supported by the jurisprudence.

In *F. T. C. v. Standard Oil of California,* 449 U.S. 232, 101 S.Ct. 488, 66 L.Ed.2d 416 (1980), Standard Oil of California (SOCAL) sought a declaration that an F. T. C. complaint issued against it was illegal and asked for an order that this complaint be withdrawn. The complaint alleged that the agency had "reason to believe" that SOCAL was violating Section 5 of the F. T. C. Act. SOCAL alleged that the complaint was illegal because Section 5(b) of the Act, 15 U.S.C. § 45(b), requires that the F. T. C. have "reason to believe" that a person, corporation, etc. is engaged in illegal activity before the Commission may issue a complaint serving to trigger hearings into the activities of the recipient. SOCAL alleged that the F. T. C. had no basis for the statements set forth in the complaint, but had allegedly issued the complaint purely as a result of political pressure. The District Court dismissed the suit, but the Ninth Circuit reversed in an opinion reminiscent of plaintiffs' argument here. The Ninth Circuit held that if the F. T. C. had not in fact made a determination of whether there was "reason to believe" that SOCAL was guilty of the violations, then the proceedings were unlawful and SOCAL should not have to endure administrative prosecution by the F. T. C. and should not have to wait until after the administrative prosecution was completed to have a judicial review of whether or not the F. T. C. had had "reason to believe." *Standard Oil of California v. F. T. C.,* 596 F.2d 1381 (9th Cir. 1979). The Supreme Court disagreed and reversed the decision of the Ninth Circuit. Although the complaint alleging that the F. T. C. had "reason to believe" SOCAL was involved in illegal activities would appear to be far more stigmatizing than the receipt of a CID for the production of documents, and although the complaint initiated proceedings which immediately embroiled SOCAL in defending itself before an administrative law judge, the Supreme Court held that the issuance of the complaint was not "final agency action" under *Abbott Laboratories.* SOCAL did not have the option which Audubon and Commercial Securities have of

complying with a CID in order to avoid legal proceedings.

█ Although the Court in *Standard Oil of California* indicated that it was basing its ruling on the lack of final agency action, much of its reasoning supports a holding that SOCAL was not unduly harmed by the administrative action. The Court stated that although the complaint did initiate proceedings against SOCAL, it did not have the same legal force as the regulation in *Abbott Laboratories,* nor did it have any comparable effect upon SOCAL's daily business. The Court recognized that the burden of responding to charges of unfair competition is substantial, but it was said to be different in kind and legal effect from the burdens constituting final agency action. 101 S.Ct. at 494. Thus, the *Standard Oil of California* case refutes plaintiffs' argument that being subject to an investigation allegedly beyond the scope of agency authority is sufficient to warrant pre-enforcement review of its lawfulness. In *Standard Oil of California,* SOCAL alleged that the expenses and disruption of defending itself in protracted adjudicatory proceedings would irreparably injure it. Thus, it argued, the legality of the complaint should be reviewed immediately. The Supreme Court replied that though substantial, the "expense and annoyance of litigation is part of the social burden of living under government." 101 S.Ct. at 495. Legal expenses and business losses from contesting the legality of an agency investigation thus do not constitute irreparable harm such that will allow circumvention of statutory provisions for judicial review. In fact, in *Petroleum Exploration, Inc. v. Public Service Commission,* 304 U.S. 209, 58 S.Ct. 834, 82 L.Ed. 1294 (1938), from which the

Supreme Court drew the above quote, the Court discussed damages such as lost time of officials and employees, impairment of good will between management and employees impairing the efficiency of operations, as well as more direct costs arising as a result of an investigation allegedly beyond the jurisdiction of an agency. The Court said that these expenses are "not the sort of irreparable injury against which equity protects." 58 S.Ct. at 840. Thus, any harm to plaintiffs' business resulting from the stigma of being investigated will not be the result of definitive agency action requiring immediate and significant alteration of daily business in order to avoid heavy sanctions which include formal anathematization of plaintiffs' products or services. Plaintiffs face only "the social burden of living under government." 101 S.Ct. at 495.

The plaintiffs also complain that the notice which they received from the F. T. C. of its determination that certain practices are illegal causes them irreparable harm. Plaintiffs state that upon receipt of this notice from the F. T. C. that the F. T. C. considered misrepresentations that credit insurance was necessary to facilitate obtaining loans are illegal, plaintiffs became subject to fines for each violation which they thereafter commit under Section 5(m)(1)(B) of the F. T. C. Act, 15 U.S.C. § 45(m)(1)(B).[9] Plaintiffs have not alleged that they have made such misrepresentations in the past. In fact, plaintiffs allege that their procedures for insuring the voluntariness of purchases of credit insurance "far exceed the FTC's requirements." Plaintiffs merely allege that they are unable to predict how the F. T. C. will apply to finance companies its determinations that such practices are ille-

---

**9.** 15 U.S.C. § 45(m)(1)(B) states:

(B) If the Commission determines in a proceeding under subsection (b) of this section that any act or practice is unfair or deceptive, and issues a final cease and desist order with respect to such act or practice, then the Commission may commence a civil action to obtain a civil penalty in a district court of the United States against any person, partnership, or corporation which engages in such act or practice—

(1) after such cease and desist order becomes final (whether or not such person, partnership, or corporation was subject to such cease and desist order), and

(2) with actual knowledge that such act or practice is unfair or deceptive and is unlawful under subsection (a)(1) of this section. In such action, such person, partnership, or corporation shall be liable for a civil penalty of not more than $10,000 for each violation.

gal when done by car dealerships. The Court finds that this notice does not present plaintiffs with the dilemma which was the "purpose of the Declaratory Judgment Act to ameliorate" according to *Abbott Laboratories.*

■ Plaintiffs also allege that regardless of the mandate required by cases such as *Atlantic Richfield,* this Court must hear this case because the F. T. C. is required to bring any contemplated enforcement proceedings as a compulsory counterclaim under Federal Rule of Civil Procedure 13(a).[10] In other words, plaintiffs seek to use Rule 13(a) to circumvent the requirements of reviewability and ripeness in a pre-enforcement action to halt an agency investigation. This position is unjustified. The framework of the F. T. C. Act and the policy behind Rule 13(a) compel this conclusion. Furthermore, the cases which have discussed this issue have unanimously rejected it.

■ It is important to recognize that the purpose of Rule 13(a) is the prevention of a multiplicity of litigation. *Southern Con-*

*struction Co. v. Pickard,* 371 U.S. 57, 60, 83 S.Ct. 108, 110, 9 L.Ed.2d 31 (1962). According to memoranda submitted by the F. T. C., 42 businesses other than the plaintiffs have received CID's pursuant to this investigation. Thus far, four other pre-enforcement actions have been filed in different districts across the country by various of these CID recipients.[11] To grant the request of plaintiffs in this regard would only serve to encourage more of these scattered preemptive attacks. On the other hand, Congress has established a statutory scheme for the enforcement of CID's which envisions that the F. T. C. will choose the timing and venue of enforcement actions.[12] The wisdom of this scheme is demonstrated by the circumstances surrounding this investigation. Allowing the statutory enforcement procedure to function as intended will curtail the multiplicity of litigation and aid judicial economy, as demonstrated in *F. T. C. v. Manufacturers Hanover Consumer Services, Inc., et al.,* Misc. No. 81–363 (E.D.Pa., filed Dec. 4, 1981). In that case the F. T. C. brought a CID enforcement

10. Rule 13(a) provides that:

A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction. But the pleader need not state the claim if (1) at the time the action was commenced the claim was the subject of another pending action; or (2) the opposing party brought suit upon his claim of attachment or other process by which the court did not acquire jurisdiction to render a personal judgment on that claim, and the pleader is not stating any counterclaim under this Rule 13.

11. *Credithrift Financial, Inc., et al. v. FTC,* No. EV 81 206 C (S.D.Ind.; decision on cross motions for summary judgment pending); *Manufacturers Hanover Consumer Services, Inc. v. FTC,* No. 81-4418 (E.D.Pa.; cross motions for summary judgment pending); *General Finance Corp. v. FTC,* No. 81–C6564 (N.D.Ill.; filed November 25, 1981); *Domestic Finance Corp. v. FTC,* No. 81 -7579 (S.D.N.Y.; filed December 7, 1981).

12. Both Section 20(e) of the F. T. C. Act, 15 U.S.C. § 57b 1(e) and its legislative history ap-

pear to treat the timing and venue of enforcement proceedings as discretionary with the F. T. C. Section 20(e) states that "Whenever any person fails to comply with any civil investigative demand ... the *Commission ... may* file, in the district court of the United States for *any* judicial district in which such person *resides, is found,* or *transacts business ...* " (Emphasis added.)

In Senate Report No. 96–500, 1980 U.S.Code Cong. and Adm.News, p. 1102 at 1126, the Senate Commerce, Science, and Transportation Committee indicated the responsibility which it expected the F. T. C. to exercise in bringing enforcement actions:

In an investigation involving companies located in one region but in more than one forum, every consideration should be given to bringing enforcement proceedings in a forum convenient to the members of the industry being investigated. The Committee expects the Commission to act responsibly in selecting such a forum.

The ability of the F. T. C. to choose forums conducive to the convenience of the industry investigated (as opposed to individual businesses) would obviously be frustrated by allowing each individual CID recipient to force the premature assertion of the enforcement claim.

action joining six different finance companies pursuant to this investigation. One of these companies had already brought a pre-enforcement action against the F. T. C. Obviously, such a concentration of litigation in one action increases judicial efficiency. To inhibit such beneficial measures by indulging in premature adjudication of an unripe issue would be to fly in the face of the very objective of Rule 13(a). Under the F. T. C. Act, the Commission should have the option to seek enforcement of this CID in any one of the several judicial districts in Louisiana and Mississippi in which the plaintiffs transact business.

The jurisprudence on this question is in accord with the above observations. In *A. O. Smith v. F. T. C.*, 417 F.Supp. 1068 (D.Del.1976), the Court rejected the argument that the Commission's enforcement action is a compulsory counterclaim to a pre-enforcement suit. The Court stated that to rule otherwise would be to "completely eviscerate the Congressionally-mandated enforcement mechanism." 417 F.Supp. at 1088. Furthermore, it would encourage the filing of pre-enforcement actions in numerous judicial districts and result in duplicative determination of the same issues. In *F. T. C. v. Carter*, 464 F.Supp. 633 (D.D.C.1979), the Court refused to dismiss an action to enforce an F. T. C. subpoena where the recipients claimed that the action should have been brought as a compulsory counterclaim to their pre-enforcement challenge in another district. The Court said that this objection was "totally without merit." 464 F.Supp. at 639. And, in *In Re FTC Patterns Report Litigation*, 432 F.Supp. 274 (D.D.C.1977), the Court refused to consider a compulsory process enforcement action to be a compulsory counterclaim to a pre-enforcement challenge, saying at p. 284:

> Acceptance of the corporate parties' argument would mean that companies seeking to resist FTC orders might well be able to choose the forum and place of the litigation simply by bringing pre-enforcement actions. These pre-enforcement actions could, as here, be brought in more than one forum. The implications of the

corporate parties' contentions might work more to encourage than discourage duplicative litigation, and thus ultimately result in impeding the policy objectives of Rule 13(a).[18] The consequences of a ruling in the corporate parties' favor could be undesirable and unwarranted.

---

[18] The corporate parties suggest that duplicative litigation could be avoided by normal procedures: motions for change of venue and coordination under the guidelines of the Judicial Panel on Multi-District Litigation. This argument does not meet, however, the FTC's concern at being forced to raise or lose its enforcement claims at times and places indicated by companies' pre-enforcement actions. At best, this relief would come at a later time, after the FTC has been forced to submit to the companies' timing for asserting enforcement claims. (Footnote contained in Court's opinion.)

See also: *Caleshu v. United States*, 570 F.2d 711 (8th Cir. 1978); *Pfeiffer Co. v. U. S.*, 518 F.2d 124 (8th Cir. 1975).

Plaintiffs cite but one case as a purported example of what they ask this Court to do. However, *Wearly v. F. T. C.*, 462 F.Supp. 589 (D.N.J.1978), vacated at 616 F.2d 662 (3d Cir. 1980), stands for the contrary proposition.

Since the Court finds that review of this matter is unavailable at this stage of the controversy, it is therefore unnecessary to consider either the F. T. C.'s contention that Audubon Life lacks standing to sue or the motions by both plaintiffs and the defendants for summary judgment on the merits of this case.

THEREFORE:

IT IS ORDERED that the motion of defendants to dismiss this action be and it is hereby GRANTED.