ISAAC C. HEMMINGS AND MARY SUE HEMMINGS, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 9710–90.     Filed February 6, 1995.

*Robert I. White* and *Lawrence Sherlock,* for petitioner Isaac C. Hemmings.

*Bruce Locke,* for petitioner Mary Sue Hemmings.

*John P. Jankowski,* for respondent.

DAWSON, *Judge:* This case was assigned to Special Trial Judge Carleton D. Powell pursuant to section 7443A(b)(4) and Rules 180, 181, and 183.[1] The Court agrees with and adopts the opinion of the Special Trial Judge which is set forth below.

OPINION OF THE SPECIAL TRIAL JUDGE

POWELL, *Special Trial Judge:* This case is before the Court on petitioners' motion[2] for partial summary judgment on the ground that respondent is barred by res judicata from determining a deficiency for the taxable year 1984 because a final

---

[1] Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the years in issue, and Rule references are to the Tax Court Rules of Practice and Procedure.

[2] In a response filed Oct. 26, 1994, petitioner Mary Sue Hemmings has joined in the motion.

judgment has been entered in the District Court on a refund suit for the same taxable year.

Respondent issued a notice of deficiency on February 16, 1990, to petitioners, determining Federal income tax deficiencies and additions to tax as follows:

|  |  | Additions to tax | |
| --- | --- | --- | --- |
| Year | Deficiency | Sec. 6653(a)(1) | Sec. 6661 |
| 1983 | $560,882 | $28,044 | $140,221 |
| 1984 | 87,362 | 4,368 | 21,841 |

Respondent also determined additions to tax under section 6653(a)(2) in amounts equal to 50 percent of the interest due on the underpayment of tax attributable to negligence for 1983 and 1984.

### FINDINGS OF FACT

Petitioners were residents of West Palm Beach, Florida, when they timely filed their petition in this case.

For purposes of the motion, the facts are summarized as follows. In 1981 petitioners opened a trading account with the Houston, Texas, office of ContiCommodity Services, Inc. (Conti), a futures commission merchant. When the office closed in May 1984, Conti filed suit against several customers, including petitioners, to recover alleged deficit equity balances in their accounts. The defendant customers filed counterclaims alleging, among other things, that many of the trades giving rise to the alleged deficit balances were misallocated, prearranged, or fictitious. All litigation relating to Conti's Houston office was consolidated for purposes of discovery in a multidistrict litigation (MDL) proceeding pursuant to 28 U.S.C. section 1407 (1988). These proceedings were assigned to the Honorable William T. Hart in the U.S. District Court for the Northern District of Illinois.

At about this time, respondent began investigating the trading performed at Conti's Houston office. By notice of deficiency respondent disallowed certain deductions claimed by petitioners on their 1981 and 1982 Federal income tax returns. Petitioners filed petitions with the Tax Court. Those cases are currently pending under docket Nos. 14273–86 and 32570–86.

In 1986 the Tax Court approved a procedure proposed by petitioners and other similarly situated taxpayers whereby all issues involving the Conti trading, including the tax issues, allegedly would be resolved in the MDL. As part of that procedure, petitioners filed a tax refund claim in the amount of $104,027 for the 1984 taxable year based on deductions for losses and expenses related to the Conti trading that they had not reported on their original return. Respondent disallowed the claim, and petitioners brought a refund suit in the U.S. District Court for the Southern District of Florida. The case was then transferred to the Northern District of Illinois and consolidated with the MDL.

In the amended complaint, petitioners alleged:

> many of the trades made by Conti for the Plaintiffs' accounts were legitimate trades that gave rise to real economic and tax consequences for the Plaintiffs. These consequences included realizing gain and loss on the disposition of the property traded, and realizing interest income and incurring interest expense during the period the property was held and financed.

The Government denied the allegation in its answer to the amended complaint. Further, the Government asserted that the complaint failed to state a claim upon which relief could be granted and that the complaint was so vague and ambiguous that it was unable to frame a proper responsive pleading.

The Government moved for summary judgment on the tax refund, which Judge Hart granted in a Memorandum Opinion and order dated January 11, 1990, as follows:

> As regards their claims against Conti and other parties, the taxpayers take the position that the trades were all "bad." As regards the tax suits, they must take the position that they were pursuing a legitimate business or making legitimate investments and therefore must contend the trades were "good." The government argues the taxpayers cannot pursue these two inconsistent positions. That issue, however, need not be decided. Even if the taxpayers can plead in the alternative, in response to a motion for summary judgment they must present evidence to support each alternative pursued. The taxpayers present insufficient evidence to support that they have any legitimate losses or deductions. The only thing that can even be construed as trying to make such a showing are their references to Conti pleadings and the taxpayers' claims for refund.
>
> A party cannot respond to a motion for summary judgment simply by citing its own pleadings. As for the Conti pleadings, they may be admissible against the Conti parties as admissions by a party-opponent, but they are not admissible against the government under that exception. Since the allegations of the complaint are not based on personal knowledge, they

cannot be used as evidence in opposition to a motion for summary judgment. * * * [Conti's pleadings] contain nothing specifying losses or interest expenses incurred in 1981 or 1984, the only years involved in the refund suits. Further, while losses are referred to, there are no facts alleged to show the trading was profit-motivated. The pleadings cited are lacking in the specificity required in response to a motion for summary judgment.

The taxpayers also present the Conti parties' response to expert witness interrogatories. The expert's statement must also contain specific facts for it to create a factual dispute preventing summary judgment. * * * There is a summary of account balances as of October 31, 1984, but nothing to show balances at the beginning of 1984 or to identify any balances to specific customers. A $27,000,000 loss is referred to as occurring in April and May 1984, as well as a net loss of $50,000,000 for calendar year 1984, but that is a total for all customers and other parts of the answer state the Brown and Hemmings group was allocated profitable trades by David Ragan. It is stated that the Brown and Hemmings group still had a substantial deficit in their accounts, but when the losses occurred is not specified and what losses the particular members of the group had is not specified. There is also no discussion of whether Brown and Hemmings were engaged in legitimate profit-motivated trades. The response to expert interrogatories does not contain specific facts necessary to defeat summary judgment.

Since the taxpayers have failed to show they are entitled to any refunds on their claims against the government, the government is entitled to summary judgment dismissing the claims against it.

[*In re ContiCommodity Services, Inc.,* 733 F. Supp. 1555, 1574–1575 (N.D. Ill. 1990); citation omitted.]

Petitioners filed a motion for reconsideration on January 26, 1990, which Judge Hart denied on February 26, 1990. Judgment on the MDL tax refund issue was entered on October 5, 1990, nunc pro tunc to January 11, 1990, granting the Government's motion for summary judgment and dismissing petitioners' cause of action with prejudice. The order rendering judgment indicated that "This action came to hearing before the Court. The issues have been heard and a decision has been rendered." Petitioners did not appeal from the judgment of the District Court.[3]

Respondent issued the notice of deficiency upon which this case is based on February 16, 1990, for petitioners' 1983 and 1984 taxable years, determining that petitioners were not

---

[3] Other taxpayers involved in the MDL, however, did appeal, and the U.S. Court of Appeals for the Seventh Circuit, reviewing the decision de novo, found that summary judgment was improper because there was a genuine issue of material fact and because the summary judgment, granted on a basis other than that urged by the Government, took the taxpayers by surprise. *Brown v. United States,* 976 F.2d 1104 (7th Cir. 1992).

entitled to any deductions related to the Conti trading claimed on their 1983 and 1984 Federal income tax returns. Petitioners filed their petition on May 16, 1990, alleging, inter alia, that the 1984 taxable year was barred by res judicata due to the MDL judgment on the refund claim. Respondent filed an answer alleging, inter alia, that collateral estoppel precluded petitioners from litigating the issues previously litigated in the MDL. Petitioners subsequently filed this motion for partial summary judgment, claiming that further litigation concerning their 1984 taxable year is barred.

## OPINION

### *Summary Judgment*

Summary judgment is intended to expedite litigation and avoid unnecessary and expensive trials. *Florida Peach Corp. v. Commissioner,* 90 T.C. 678, 681 (1988); *Shiosaki v. Commissioner,* 61 T.C. 861, 862 (1974). Rule 121 provides that either party may move for summary judgment upon all or any part of the legal issues in controversy. The Rule further provides that a decision shall be rendered if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law. There does not appear to be any dispute as to a material fact here.[4] Therefore, we think the issue as to whether the judgment of the District Court bars further litigation of petitioners' 1984 taxable year is ripe for decision.

### *Statutory Bars to Tax Litigation*

At the outset of our analysis, we explore the statutory provisions concerning bars to multiple litigation. Section 6212(a) authorizes the Secretary to send a taxpayer a notice of deficiency. Generally the taxpayer has 90 days within which to file a petition with the Tax Court; during that time, the Commissioner may take no action to collect the determined deficiency. Sec. 6213(a). Taxpayers who pay the determined deficiency may seek an administrative refund and, if rejected, pursue a refund action in District Court or the U.S.

---

[4] Although respondent, in her objection to petitioners' motion, indicates that a material fact is at issue, she does not specify what is in dispute.

Court of Federal Claims (the Claims Court).[5] Sec. 7422(a); 28 U.S.C. sec. 1346(a)(1) (1988).

Section 6212(c)(1) prohibits the Commissioner from issuing a notice of deficiency for a taxable year that is already the subject of litigation in the Tax Court:

If the Secretary has mailed to the taxpayer a notice of deficiency as provided in subsection (a), and the taxpayer files a petition with the Tax Court within the time prescribed in section 6213(a), the Secretary shall have no right to determine any additional deficiency of income tax for the same taxable year * * * except in the case of fraud, and except as provided in section 6214(a) (relating to assertion of greater deficiencies before the Tax Court), in section 6213(b)(1) (relating to mathematical or clerical errors), in section 6851 or 6852 (relating to termination assessments), or in section 6861(c) (relating to the making of jeopardy assessments).[6]

Similarly, section 6512(a) prohibits taxpayers who petition the Tax Court from subsequently pursuing a refund for the same taxable year:

If the Secretary has mailed to the taxpayer a notice of deficiency * * * and if the taxpayer files a petition with the Tax Court within the time prescribed in section 6213(a), no credit or refund of income tax for the same taxable year * * * in respect of which the Secretary has determined the deficiency shall be allowed or made and no suit by the taxpayer for the recovery of any part of the tax shall be instituted in any court * * * [With certain exceptions not applicable here.]

See *Russell v. United States,* 592 F.2d 1069 (9th Cir. 1979).

The language of sections 6212 and 6512 first appeared in the Revenue Act of 1926 (the 1926 Act), ch. 27, 44 Stat. 9. Prior to the 1926 Act, upon the Commissioner's determination of a deficiency, the taxpayer "shall be notified of such deficiency" and could file an appeal with the Board of Tax Appeals (the antecedent of the Tax Court, hereinafter the Board) within 60 days. Revenue Act of 1924 (the 1924 Act), ch. 234, sec. 274(a), 43 Stat. 253, 297. If no appeal to the Board were filed, the tax would be immediately assessed and collected. 1924 Act sec. 274(c), 43 Stat. 297.

---

[5] The U.S. Court of Federal Claims is the successor to the original jurisdiction of the U.S. Claims Court, which was the successor to the original jurisdiction of the Court of Claims. For convenience, we refer to these courts collectively as the Claims Court.

[6] Another exception to the general rule occurs when the Commissioner issues a second notice for the same year with respect to certain adjustments relating to partnership proceedings under secs. 6221–6233. Sec. 6230(a)(2)(C).

With respect to the Commissioner, prior to the 1926 Act,[7] if the Commissioner was dissatisfied with the amount determined by the Board, within 1 year after the decision of the Board, she could bring a collection action placing in issue the amount of the deficiency disapproved by the Board. 1924 Act sec. 274(b), 43 Stat. 297. Furthermore, other than the statute of limitations, there was no limitation on the Commissioner's power to issue notices of deficiency. 1924 Act sec. 277, 43 Stat. 299.

Prior to 1926, if the taxpayer appealed to the Board and was dissatisfied with the result, he could pay the tax and bring a suit for a refund in District Court or in the Claims Court. See *Old Colony Trust Co. v. Commissioner,* 279 U.S. 716 (1929). The Board's decision did not have preclusive effect in the refund action; rather, it was merely prima facie evidence of the issues. There was no direct appeal to the Courts of Appeals from the decision of the Board, and, if either the Commissioner or the taxpayer wished to pursue the matter further, an appeal would lie from the judgment of the District Court.

The 1926 Act had as one of its goals the streamlining of tax litigation. The House bill barred taxpayers from pursuing any refund action once the Commissioner issued the notice of deficiency. H.R. 1, 69th Cong., 1st Sess. sec. 281(d) (1925). Furthermore, under the House version, except in the case of fraud, the Commissioner had "no right to determine an additional deficiency in respect of the same taxable year" once a notice of deficiency had been issued. H. Rept. 1, 69th Cong., 1st Sess. (1925), 1939–1 C.B. (Part 2) 315, 322. The Senate Finance Committee considered these measures "too drastic" and limited the provision to cases in which the taxpayer petitions the Board:

[the taxpayer's] entire tax liability for the year in question * * * is finally and completely settled by the decision of the Board when it has become final, whether the decision is by findings of fact or opinion, or by dismissal * * *. The duty of the Commissioner to assess the deficiency thus determined is mandatory, and no matter how meritorious a claim for * * * refund he can not entertain it, nor can suit be maintained against the United States or the collector. Finality is the end sought to be attained by these provisions of the bill, and the committee is convinced that to allow

---

[7] As to proceedings prior to the Revenue Act of 1926 (1926 Act), ch. 27, 44 Stat. 9, see Griswold, "Res Judicata in Federal Tax Cases", 46 Yale L.J. 1320, 1320–1324 (1937).

the reopening of the question of the tax for the year involved either by the taxpayer or by the Commissioner * * * would be highly undesirable. [S. Rept. 52, 69th Cong., 1st Sess. (1926), 1939–1 C.B. (Part 2) 332, 351.]

The Senate version, which became section 284(d) of the 1926 Act, 44 Stat. 67, provided that the subsequent action was only barred if the taxpayer filed a petition with the Board. This, of course, is the current section 6512(a).

Similarly, the Senate Finance Committee considered and rejected a House proposal to flatly deny the Commissioner the power to issue a second notice of deficiency. Section 274(f) of the 1926 Act, 44 Stat. 56, the predecessor of section 6212(c)(1), limited the Commissioner to one notice of deficiency where the taxpayer petitioned the Board, except in the case of fraud. Where a taxpayer does not invoke the Tax Court's jurisdiction, the Senate Finance Committee noted that "he has a right to file suit for refund at any time within the statutory period of limitations, and there seems no reason why in such cases the Commissioner should not have equal right to assess any further deficiency he may find within the statute of limitations imposed on the Government." S. Rept. 52, *supra,* 1939–1 C.B. (Part 2) at 353.

Another important change from the 1924 Act was that section 1001(a) of the 1926 Act, 44 Stat. 109, the predecessor of section 7482, provided for direct appeal from a decision of the Board to the Courts of Appeals. Consequently, tax decisions by the Board generally obtained preclusive effect in subsequent actions. See *Old Colony Trust Co. v. Commissioner, supra.*

However, the 1926 Act produced a situation where a District Court (or the Claims Court) and the Board would have concurrent jurisdiction over cases involving the same taxable year. If a taxpayer filed a refund suit in the District Court (or Claims Court) and the Commissioner subsequently issued a notice of deficiency for the same year, the taxpayer could petition the Board for a redetermination of the deficiency while maintaining the refund action. See *Camp v. United States,* 44 F.2d 126 (4th Cir. 1930); *Ohio Steel Foundry Co. v. United States,* 69 Ct. Cl. 158, 38 F.2d 144 (1930).

To limit the situations in which this occurred, Congress enacted section 7422(e) as a part of the Internal Revenue

Code of 1954, ch. 736, 68A Stat. 3, 877. Section 7422(e) provides in pertinent part:

If the Secretary prior to the hearing of a suit brought by a taxpayer in a district court or the United States Claims Court for the recovery of any income tax * * * mails to the taxpayer a notice that a deficiency has been determined in respect of the tax which is the subject matter of taxpayer's suit, the proceedings in taxpayer's suit shall be stayed during the period of time in which the taxpayer may file a petition with the Tax Court for a redetermination of the asserted deficiency, and for 60 days thereafter. If the taxpayer files a petition with the Tax Court, the district court or the United States Claims Court, as the case may be, shall lose jurisdiction of taxpayer's suit to whatever extent jurisdiction is acquired by the Tax Court of the subject matter of taxpayer's suit for refund. If the taxpayer does not file a petition with the Tax Court for a redetermination of the asserted deficiency, the United States may counterclaim in the taxpayer's suit, or intervene in the event of a suit as described in subsection (c) (relating to suits against officers or employees of the United States), within the period of the stay of proceedings notwithstanding that the time for such pleading may have otherwise expired. * * *

As the phrase "prior to the hearing of a suit" indicates, "Subsection (e) does not apply if the case in the District Court * * * has already proceeded to a hearing, that is, to actual trial." S. Rept. 1622, 83d Cong., 2d Sess. 13, 611 (1954); see *Zeeman v. United States,* 275 F. Supp. 235, 258 (S.D.N.Y. 1967), affd. in part and remanded on other issues 395 F.2d 861 (2d Cir. 1968).

Section 7422(e) was designed to allow the taxpayer to choose the forum in cases where the Tax Court and the District Court (or Claims Court) had concurrent jurisdiction. *Flora v. United States,* 362 U.S. 145, 166 (1960). The main thrust of section 7422(e) is to prevent two courts from having jurisdiction of the same taxable year *at the same time. Id.* On its face, however, it does not prohibit two actions involving the same taxable year from being litigated seriatim.

In sum, under the 1926 Act and the 1954 Code changes, if no notice of deficiency is issued, but the taxpayer maintains that he overpaid the tax due, his sole remedy is a refund suit. If a notice of deficiency is issued, however, the taxpayer has two choices. First, if he files a timely petition with the Tax Court, generally the taxpayer and, except in the case of fraud, the Commissioner are both barred from instigating further litigation related to the taxable year once the Tax Court enters a final decision. If the taxpayer does

not file a petition and pays the tax, his remedy is a refund suit. The filing of a refund action in the District Court or the Claims Court, however, does not statutorily bar the Commissioner from issuing a notice of deficiency for the same taxable year pursuant to section 6212(a). "The Code stops short of compelling consolidation of all tax disputes for a given year in the district court." *Pfeiffer Co. v. United States,* 518 F.2d 124, 129 (8th Cir. 1975).

Contrary to respondent's contention, however, section 7422(e) does not provide an answer to this case. The notice of deficiency was issued more than 1 month after summary judgment was granted in favor of the United States. Clearly the notice of deficiency was issued too late to invoke section 7422(e). The question then turns to whether a second action is precluded by the doctrine of res judicata.

## Res Judicata

A refund suit and a proceeding before the Tax Court are both actions in personam, and, consequently, litigation may proceed in both courts, with the statutory exceptions described above, until judgment. *Morris Plan Indus. Bank v. Commissioner,* 151 F.2d 976 (2d Cir. 1945), affg. a Memorandum Opinion of this Court. In *Kline v. Burke Construction Co.,* 260 U.S. 226, 230 (1922), the Supreme Court discussed the preclusive effects of dual jurisdiction:

Whenever a judgment is rendered in one of the courts and pleaded in the other, the effect of that judgment is to be determined by the application of the principles of *res adjudicata* by the court in which the action is still pending * * *. The rule, therefore, has become generally established that where the action first brought is *in personam* and seeks only a personal judgment, another action for the same cause in another jurisdiction is not precluded. [Citation omitted.]

Generally, the doctrine of res judicata prevents parties from relitigating the same issues or claims, and promotes the finality of court judgments, by giving prior judgments preclusive effect on subsequent litigation. With certain exceptions, the application of res judicata requires that both parties to the current litigation be the same parties, or their privies, that litigated the first action. See *Parklane Hosiery Co. v. Shore,* 439 U.S. 322 (1979). Mutuality of parties is present here, as the United States and the Commissioner are

considered to be the same party for purposes of res judicata. Sec. 7422(c).

The term "res judicata" encompasses total res judicata (claim preclusion) and partial res judicata (issue preclusion or collateral estoppel). See *Migra v. Warren City School Dist.*, 465 U.S. 75, 77 n.1 (1984); *Kaspar Wire Works, Inc. v. Leco Engg. & Machine, Inc.*, 575 F.2d 530, 535–536 (5th Cir. 1978). We will consider each aspect of res judicata separately, using the terminology "claim preclusion" and "issue preclusion" to distinguish between the two.

## Claim Preclusion—Generally

The Supreme Court in *Cromwell v. County of Sac*, 94 U.S. 351, 353 (1877), has set out the enduring statement of claim preclusion:

a judgment estops not only as to every ground of recovery or defense actually presented in the action, but also as to every ground which might have been presented * * *. Such demand or claim, having passed into judgment, cannot again be brought into litigation between the parties in proceedings at law upon any ground whatever.

Generally, claim preclusion prevents a party from asserting a claim that has been, or should have been, the subject of prior litigation. Upon judgment, further action on the claim is precluded either by merger (where the claimant is successful) or by bar (where the claimant is unsuccessful). Not only does this affect claims made by a plaintiff, 1 Restatement, Judgments 2d, secs. 18 and 19 (1982), but it also affects permissive counterclaims[8] and defenses asserted by the defendant, *id.* secs. 21(1), 23; see *Derderian v. Union Market Natl. Bank*, 95 N.E.2d 552, 554 (Mass. 1950) ("a party who has the right to elect whether to assert a * * * [claim] as a matter of defence [sic] or as a basis for an independent action, and chooses the first course and secures the benefit of such defence, cannot subsequently maintain an action to recover additional damages").

Claim preclusion also functions as a compulsory joinder of claims to prevent a plaintiff from asserting claims in a second proceeding that should have been asserted in the earlier

---

[8] A permissive counterclaim is "any claim against an opposing party not arising out of the transaction or occurrence that is the subject matter of the opposing party's claim." Fed. R. Civ. P. 13(b).

proceeding. Where a claim is extinguished pursuant to the rules of merger or bar, "the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose." 1 Restatement, *supra* sec. 24; cf. Fed. R. Civ. P. 18(a).

Similarly, under the compulsory counterclaim rules of res judicata, a defendant may not assert certain counterclaims or defenses in a later proceeding. Where the counterclaim is compulsory within the meaning of rule 13(a) of the Federal Rules of Civil Procedure (rule 13(a)),[9] the principles of claim preclusion apply to block a second action. *Cleckner v. Republic Van & Storage Co.,* 556 F.2d 766 (5th Cir. 1977); see 1 Restatement, *supra* sec. 22(2)(a). Further, under the so-called common law compulsory counterclaim rule, the subsequent prosecution of a counterclaim outside the scope of rule 13(a) is precluded where the action "would nullify the initial judgment or would impair rights established in the initial action." 1 Restatement, *supra* sec. 22(2)(b); see *Martino v. McDonald's System, Inc.,* 598 F.2d 1079, 1083 (7th Cir. 1979); *Moreno v. Marbil Prods., Inc.,* 296 F.2d 543 (2d Cir. 1961); *Shaheen v. Commissioner,* 62 T.C. 359 (1974); 1 Restatement, *supra* sec. 22(2)(b), Reporter's Note on Comment f (Tent. Draft No. 1, 1973); *id.,* Illustration 9 and Reporter's Note thereon (Tent. Draft No. 1, 1973). Conversely, where the defendant in the first action fails to bring a counterclaim that is *not* compulsory under rule 13(a) or the "common law", the claim may be maintained in a subsequent action. *Mercoid Corp. v. Mid-Continent Inv. Co.,* 320 U.S. 661, 671 (1944); see 1 Restatement, *supra* sec. 22(1).

## Claim Preclusion—Effect of Tax Court Decisions

In *Commissioner v. Sunnen,* 333 U.S. 591, 598 (1948), the Supreme Court considered the doctrine of claim preclusion in relation to cases decided by the Tax Court:

Income taxes are levied on an annual basis. Each year is the origin of a new liability and of a separate cause of action. Thus if a claim of liability or non-liability relating to a particular tax year is litigated, a judgment on

---

[9] Rule 13(a) defines a compulsory counterclaim as "any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim".

the merits is *res judicata* as to any subsequent proceeding involving the same claim and the same tax year. * * *

Included in the cause of action described above is any claim the taxpayer may have for a refund for the taxable year.[10] Once the Tax Court enters a final decision, refund actions for the taxable year are barred. *Russell v. United States,* 592 F.2d 1069 (9th Cir. 1979); *Cohen v. United States,* 2 Cl. Ct. 181 (1983), affd. without published opinion 727 F.2d 1118 (Fed. Cir. 1983). This rule is codified by section 6512, discussed *supra* p. 226. On the other side of the coin, the Government generally is barred from issuing a second notice of deficiency for the same taxable year by section 6212(c)(1), discussed *supra* p. 226. As a general rule, therefore, where the Tax Court has entered a decision for a taxable year, both the taxpayer and the Commissioner (with certain exceptions) are barred from reopening that year.

*Claim Preclusion—Effect of Refund Actions*

An action brought in District Court or the Claims Court by a taxpayer for the refund of taxes "is in the nature of an action for money had and received, and it is incumbent upon the claimant to show that the United States has money which belongs to him." *Lewis v. Reynolds,* 284 U.S. 281, 283 (1932). In pursuing the claim, the taxpayer has the burden of proving entitlement to each item of credit or deduction reported in that tax year, even if assessment is barred by the statute of limitations. *Id.* The Government is not required to determine a deficiency to put these items at issue. *Zeeman v. United States,* 395 F.2d 861, 865 (2d Cir. 1968). Where a taxpayer brings a refund suit in a District Court or the Claims Court, these courts have held that the taxpayer is precluded from later pursuing a second refund suit for the same taxable year, even if based on a different item of income or deduction. See *Finley v. United States,* 612 F.2d 166 (5th Cir. 1980); *Southern Md. Agric. Association v.*

---

[10] It should be noted that prior to passage of the 1926 Act, the tax liability of a taxable year could be split into separate claims, as the Board of Tax Appeals did not have refund jurisdiction:

If * * * [the taxpayer] did not in fact submit to the Board of Tax Appeals its claim for refund of taxes paid, and it was not required so to do by any provision of law, the decision of that Board on the correctness of an unrelated administrative decision of the Commissioner cannot be pleaded as res adjudicata in a suit to enforce its claim for refund after it has been rejected by the Commissioner. * * * [*Old Colony R.R. v. United States,* 27 F.2d 994, 998 (D. Mass. 1928).]

*United States,* 133 Ct. Cl. 426, 135 F. Supp. 886 (1955); *Arnold v. United States,* 784 F. Supp. 773 (D. Or. 1992); *Tecon Engineers, Inc. v. United States,* 15 AFTR 2d 467, 65–1 USTC par. 9320 (E.D. Ky. 1965). But cf. *Pfeiffer Co. v. United States,* 385 F. Supp. 367, 372 (E.D. Mo. 1974), affd. on other grounds 518 F.2d 124 (8th Cir. 1975).[11]

What is sauce for the goose, however, is not necessarily sauce for the gander. As we have discussed, the doctrine of claim preclusion bars litigation of all compulsory counterclaims of the defendant and any permissive counterclaims that are actually litigated. While the nature of a refund suit puts all *issues* that the taxpayer may have before the court, whether the Government here is precluded from determining the deficiency depends on whether it had a compulsory counterclaim in the MDL.

The courts that have considered the issue have uniformly rejected the contention that the claim of the United States for unassessed additional taxes in a refund action is a compulsory counterclaim. Some courts have held that the Commissioner does not have a claim against the taxpayer until the assessment is made, and therefore there cannot be a compulsory counterclaim. *Pfeiffer Co. v. United States,* 518 F.2d at 129–130;[12] *Penn Security Life Ins. Co. v. United States,* 207 Ct. Cl. 594, 524 F.2d 1155, 1159 (1975); *Bar L Ranch, Inc. v. Phinney,* 400 F.2d 90, 92 (5th Cir. 1968);[13] *Florida v. United States,* 285 F.2d 596, 602–604 (8th Cir.

---

[11] See discussion *infra* note 12.

[12] An issue raised in the District Court in *Pfeiffer Co. v. United States,* 385 F. Supp. 367 (E.D. Mo. 1974), affd. 518 F.2d 124 (8th Cir. 1975), is similar to the issue here, although the roles are reversed. While a refund action was pending in District Court, the taxpayer received a notice of deficiency for the same taxable year. The taxpayer did not file a petition with the Tax Court. Rather, it paid the tax and amended its complaint; the court dismissed the amendment because the taxpayer had not filed an administrative claim. See sec. 7422(a). The taxpayer agreed to a dismissal of the case with prejudice, filed a claim for refund arising from assessment of the deficiency, and instituted a second refund action upon rejection of the claim. The Government argued that the dismissal of the first action barred a second refund action on the same taxable year. The court, holding against the Government on this issue, stated that "The cause of action litigated in the * * * [first] suit was plaintiff's claim that it had overpaid its 1970 taxes. * * * [The judgment] was not an adjudication that plaintiff was liable for any *additional* tax *subsequently* assessed." *Id.* at 371. The claim in the second action did not exist at the time of the first action, and was not precluded.

[13] We note that an appeal in this case lies in the U.S. Court of Appeals for the Eleventh Circuit. Although that court has not decided the issue, it has adopted the decisions of the Court of Appeals for the Fifth Circuit prior to Oct. 1, 1981, as binding precedent. *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir. 1981). The court in *Bar L Ranch, Inc. v. Phinney,* 400 F.2d 90 (5th Cir. 1968), indicated that the Commissioner's claim against the taxpayers is a permissive counterclaim, and methods other than a counterclaim in the refund action could be used for the collection of tax.

1960); *Crocker v. United States,* 323 F. Supp. 718, 723 (N.D. Miss. 1971).[14] Other cases have held that, regardless of the existence of the claim, the specific statutory framework of the deficiency and collection procedures overrides the general procedural rules of rule 13(a). *Caleshu v. United States,* 570 F.2d 711, 713–714 (8th Cir. 1978); see *Pension Benefit Guaranty Corp. v. Alloytek, Inc.,* 924 F.2d 620, 626 (6th Cir. 1991); *Arch Mineral Corp. v. Lujan,* 911 F.2d 408, 414–415 n.3 (10th Cir. 1990); *Gustin v. United States,* 876 F.2d 485, 490 n.1 (5th Cir. 1989); *Audubon Life Ins. Co. v. FTC,* 543 F. Supp. 1362, 1371 (M.D. La. 1982); *In re FTC Corporate Patterns Report Litigation,* 432 F. Supp. 274, 283–284 (D.D.C. 1977); *Smith v. FTC,* 417 F. Supp. 1068, 1088 (D. Del. 1976) (to treat the Government's claim as a compulsory counterclaim "would serve to completely eviscerate the Congressionally-mandated enforcement mechanism"). These lines of cases are not mutually exclusive, and together they make clear that the compulsory counterclaim rule does not bar respondent from determining a deficiency following a refund action as was done here. See *Patzkowski v. United States,* 576 F.2d 134, 136 n.1 (8th Cir. 1978) ("When a taxpayer has sued for a refund, the Government may, of course, assert its collection action as a counterclaim; alternatively, however, it may file a separate collection action.").

*Issue Preclusion*

The final question is whether respondent is barred by issue preclusion. Issue preclusion, or collateral estoppel, is defined in 1 Restatement, Judgments 2d, sec. 27 (1982): "When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." The Supreme Court distinguished issue preclusion from the broader doctrine of claim preclusion "where the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel only as to those matters in issue or

---

[14] We need not decide whether, if an assessment had been made, the claim of the United States would then constitute a compulsory counterclaim. See *Crocker v. United States,* 323 F. Supp. 718 (N.D. Miss. 1971). But cf. *Pfeiffer v. United States,* 518 F.2d at 129–130 n.11. There had been no assessment at the time of the MDL proceedings in this case.

points controverted, upon the determination of which the finding or verdict was rendered." *Cromwell v. County of Sac,* 94 U.S. at 353.

The issue litigated in the MDL proceeding was whether petitioners were entitled to deduct losses relating to the Conti trading that they had not claimed on their Federal income tax returns. Judge Hart decided that petitioners had not adduced sufficient evidence to support the claim for a refund and granted the Government's motion for summary judgment. No issues were resolved against the Government. Clearly, issue preclusion does not benefit petitioners.

*Conclusion*

Based on the foregoing, we hold that the doctrine of res judicata does not bar respondent from determining the deficiency in petitioners' Federal income tax for 1984. Therefore,

*An order will be issued denying petitioners' motion for partial summary judgment.*