T.C. Memo. 2013-178

UNITED STATES TAX COURT

DALE H. SANTA, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 27513-09L.                    Filed August 5, 2013.

Melanie E. Marmion, for petitioner.

John D. Davis, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

MARVEL, Judge:  Pursuant to sections 6015(e), 6320, and 6330(d),[1]

petitioner seeks review of respondent's determination to deny him relief from joint

_____

[1]Unless otherwise indicated, all section references are to the Internal
Revenue Code in effect at all relevant times, and all Rule references are to the Tax
Court Rules of Practice and Procedure.

**[*2]** and several liability under section 6015(b), (c), and (f) and to sustain the filing of a notice of Federal tax lien (NFTL) with respect to his unpaid Federal income tax liability for 2002. The issues for decision are: (1) whether res judicata bars petitioner's claim for relief under section 6015 for 2002; (2) if petitioner's claim for relief under section 6015 is not barred, whether he is entitled to relief from joint and several liability under section 6015 for 2002; and (3) whether the Appeals Office abused its discretion in denying petitioner's request for relief under section 6015 when it sustained the filing of the NFTL.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and facts drawn from stipulated exhibits are incorporated herein by this reference. Petitioner resided in Oregon when he petitioned this Court.

I.    Background

Petitioner married Rebecca S. Santa on July 16, 1983. During the course of the marriage Ms. Santa, who suffered from various addictions, sometimes made poor financial decisions and hid those decisions from petitioner. For example, Ms. Santa opened credit card accounts using post office boxes without petitioner's knowledge and forged petitioner's signature to the title to petitioner's vehicle so that she could sell it to obtain cash. During 2002 and possibly for some time

[*3] thereafter petitioner's relationship with Ms. Santa was "off and on" and petitioner and Ms. Santa sometimes resided apart.

Because of Ms. Santa's financial instability, petitioner maintained and used a separate bank account. Petitioner was not aware of the bank accounts that Ms. Santa used during 2002 and did not see any of the bank statements for the accounts she used.

In 2002 Ms. Santa withdrew $95,392 from a profit-sharing account that she owned. Petitioner did not know of Ms. Santa's profit-sharing account withdrawal and did not benefit from it.

Petitioner and Ms. Santa filed a joint Form 1040, U.S. Individual Income Tax Return, for 2002.[2] Ms. Santa provided the information the return preparer used to prepare the 2002 joint return. Ms. Santa did not provide the preparer information regarding the $95,392 that she withdrew from the profit-sharing account or regarding wages from several of the jobs that she had during 2002, and this income was not reported on the joint return. Petitioner did not know at the

---

[2]The parties stipulated that petitioner and Ms. Santa jointly filed a 2002 tax return. Petitioner testified, however, that the signature in his name on the 2002 return does not appear to be his and that Ms. Santa had previously forged his signature for financial reasons. Petitioner also testified that he did not recall whether he had signed the return. However, because the parties stipulated that petitioner and Ms. Santa filed the joint return, and we so find, we do not address whether petitioner actually signed the return.

[*4] time the 2002 joint return was filed that Ms. Santa had failed to include the profit-sharing account withdrawal and some of her wage income on the joint return.

## II.    Petitioner's 2005 Tax Court Case

On July 12, 2004, respondent mailed to petitioner a Notice CP-2000, which proposed changes to petitioner and Ms. Santa's joint 2002 return. Petitioner then filed a Form 8857, Request for Innocent Spouse Relief (2004 Form 8857), with respect to his joint income tax liability for 2002. On December 20, 2004, respondent issued to petitioner a Letter 3661C, Requesting Spouse Preliminary Determination Letter, proposing to deny petitioner relief from joint liability for 2002.

On March 28, 2005, respondent mailed to petitioner and Ms. Santa separate notices of deficiency for 2002. The notice of deficiency addressed to petitioner did not mention petitioner's request for relief from joint liability, nor did it make a determination regarding that request. Petitioner and Ms. Santa filed separate petitions disputing respondent's deficiency determination for 2002.

In his petition at docket No. 11744-05S (2005 petition) petitioner requested relief from joint and several liability on the grounds that he was unaware that Ms. Santa had withdrawn the funds from her profit-sharing account. Petitioner did not

[*5] allege that he was separated from Ms. Santa. After filing his petition, petitioner had limited correspondence or contact with respondent's employees or counsel. Petitioner did not notify the Court or respondent's counsel about any change of address during the pendency of the case.

The Court set petitioner's case for trial at the April 24, 2006, trial session in St. Paul, Minnesota. Petitioner failed to appear when his case was called from the calendar because he never received the notice scheduling the case for trial.

On April 24, 2006, respondent's counsel filed a motion to dismiss for lack of prosecution in docket No. 11744-05S. On May 3, 2006, the Court entered an order of dismissal and decision granting respondent's motion and denying petitioner's claim for relief under section 6015. Although petitioner had not specifically requested relief under any particular subsection of section 6015 in his petition or alleged that he and Ms. Santa had been separated for more than 12 months or were divorced, the Court's order and decision denied petitioner's claim for relief under section 6015(b), (c), and (f).

III.    Petitioner's Divorce From Ms. Santa

On October 29, 2007, Ms. Santa filed a petition for dissolution of marriage without children in the Minnesota district court. In her divorce petition Ms. Santa

[*6] stated that she had separated from petitioner on July 21, 2006. Petitioner and Ms. Santa divorced on May 17, 2008.

IV.     Petitioner's Present Case

On May 16, 2008, respondent filed an NFTL against petitioner and Ms. Santa for the unpaid joint tax liability for 2002. On May 20, 2008, respondent issued to petitioner and Ms. Santa a notice of the NFTL filing.

On June 10, 2008, petitioner filed a second Form 8857 (2008 Form 8857) for 2002. In his 2008 Form 8857 petitioner stated that (1) he had been living apart from Ms. Santa since May 1, 2002; (2) he and Ms. Santa had divorced on May 17, 2008; (3) he and Ms. Santa maintained joint accounts in 2002 but he had limited or no use of the accounts; and (4) Ms. Santa "hid all bills from * * * [him] until collectors would call * * * [him] at work."[3] On June 12, 2008, petitioner filed a Form 12153, Request for a Collection Due Process or Equivalent Hearing, with respect to his 2002 tax liability, requesting section 6015 relief and an offer-in-compromise.[4]

---

[3]In a letter dated May 10, 2008, petitioner wrote that "[w]e have been separated since 2003 and finally divorce[d]."

[4]On October 3, 2008, Tax Examiner Diana Kmit prepared workpapers with respect to petitioner's request for relief from his joint liability for 2002. Tax Examiner Kmit preliminarily proposed to grant petitioner relief under sec. 6015(c)

(continued...)

**[\*7]** On November 2, 2009, respondent mailed to petitioner a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 (notice of determination), sustaining the filing of the NFTL on the grounds that petitioner's section 6015 request had been denied[5] and that he had submitted no financial information that could be used to determine whether any collection alternative would have been appropriate.

---

[4](...continued)
"for the portion [of petitioner's joint 2002 liability] that is attributable to the \* \* \* [nonrequesting spouse's] wages." Tax Examiner Kmit's workpapers further state that Ms. Santa stated that petitioner "was aware she withdrew the profit sharing, just not how much." However, Tax Examiner Kmit rejected Ms. Santa's statement because "in EXAM work papers, \* \* \* [Ms. Santa] states full amount of her profit sharing was deposited into joint checking." The exam workpapers, in turn, state that Ms. Santa "did state that the full amount of the profit sharing distribution was deposited into the joint checking account, and that she had full control of the account." Tax Examiner Kmit concluded that petitioner had actual knowledge of Ms. Santa's withdrawal from her profit-sharing account and thus was not eligible for relief from the joint liability arising from that transaction under sec. 6015(b), (c), and (f).

[5]The notice of determination does not explain why the Appeals Office denied petitioner's sec. 6015 request. The administrative record, however, reveals that on August 20, 2009, Appeals Officer Gloria L. Griffin wrote in an Appeals Transmittal and Case Memo that petitioner "has not provided any information which would qualify for relief of liability under \* \* \* [sec.] 6015(b), (c), or (f). It appears that \* \* \* [petitioner] has already had the opportunity to appear in Tax Court on this issue. \* \* \* It appears that the Tax Court has made a ruling on the \* \* \* [sec. 6015] issue as it pertains to \* \* \* [petitioner]."

**[\*8]**  On November 13, 2009, petitioner mailed to this Court his petition (2009 petition), contesting respondent's determination.  In the petition, petitioner stated that he and Ms. Santa "were separated in 2002 but filed jointly".  The only contention petitioner makes in the 2009 petition is that he should be granted section 6015 relief for the portion of his tax liability attributable to Ms. Santa's withdrawal from her profit-sharing account and her unreported wages.

## OPINION

Because respondent denied petitioner's timely section 6015 request in a final notice of determination after conducting a section 6320 hearing, we would ordinarily have jurisdiction to review respondent's denial of his section 6015 request either (1) pursuant to sections 6320 and 6330(d) <u>or</u> (2) pursuant to section 6015(e).  <u>See</u> <u>Gray v. Commissioner</u>, 140 T.C. ___, ___ (slip op. at 9) (Apr. 25, 2013); sec. 1.6015-7(b), Income Tax Regs.  We first address petitioner's claim for relief pursuant to section 6015(e).

I.      <u>Review Pursuant to Section 6015(e)</u>

    A.      <u>Section 6015 Elections and Requests</u>

        1.      <u>Generally</u>

Generally, married taxpayers who file a joint Federal income tax return are jointly and severally liable for the tax reported or reportable on the return.  Sec.

**[*9]** 6013(d)(3); <u>Butler v. Commissioner</u>, 114 T.C. 276, 282 (2000). Section 6015 allows a spouse to obtain relief from joint and several liability in certain circumstances. Section 6015(a)(1) provides that a spouse who has made a joint return may elect to seek relief from joint and several liability under section 6015(b) (dealing with relief from liability for an understatement of tax with respect to a joint return). Section 6015(a)(2) provides that an eligible spouse may elect to limit that spouse's liability for any deficiency with respect to a joint return under section 6015(c) (dealing with relief from joint and several liability for taxpayers who are no longer married, are legally separated, or are no longer living together). If a taxpayer does not qualify for relief under either section 6015(b) or (c), the taxpayer may seek equitable relief under section 6015(f).

Petitioner seeks relief from the portion of his joint liability for 2002 arising from Ms. Santa's withdrawal from her profit-sharing account and her unreported wages. Because we find that petitioner is entitled to the full relief that he seeks under section 6015(c), we will address only petitioner's claim for relief under that section.

2. Section 6015(c)

Under section 6015(c), if the requesting spouse is either (1) no longer married to the nonrequesting spouse, (2) legally separated from the nonrequesting

[*10] spouse, or (3) not a member of the same household as the nonrequesting spouse during the 12-month period ending on the date such election is filed, the requesting spouse may seek to limit his or her liability for a deficiency as provided in section 6015(d). Sec. 6015(c)(1), (3)(A)(i). A requesting spouse may request section 6015(c) relief any time after a deficiency is asserted but no later than two years after the date on which the Secretary has begun collection activities with respect to the requesting spouse. Sec. 6015(c)(3)(B).

Section 6015(d) provides that, in general, any item giving rise to a deficiency on a joint return is allocated to the spouses as if they had filed separate returns. Sec. 6015(d)(3)(A). The requesting spouse is liable only for his or her proportionate share of the deficiency that results from such allocation. Sec. 6015(d)(1). If an item giving rise to a deficiency provided a tax benefit on the joint return to the nonrequesting spouse, the item is allocated to the nonrequesting spouse. Sec. 6015(d)(3)(B); Hopkins v. Commissioner, 121 T.C. 73, 83-86 (2003). The requesting spouse bears the burden of establishing the amount of the deficiency allocable to him or her. Sec. 6015(c)(2).

Relief under section 6015(c) is not available where the Commissioner proves that the requesting spouse had "actual knowledge, at the time such individual signed the return, of any item giving rise to a deficiency * * * which is

**[*11]** not allocable to such individual".[6]  Sec. 6015(c)(3)(C).  Actual knowledge is "an actual and clear awareness (as opposed to reason to know) of the existence of an item which gives rise to the deficiency (or portion thereof)."  Cheshire v. Commissioner, 115 T.C. 183, 195 (2000), aff'd, 282 F.3d 326 (5th Cir. 2002).  In the case of omitted income the requesting spouse must have had an actual and clear awareness of the omitted income.  See id.; see also sec. 1.6015-3(c)(2)(i)(A), Income Tax Regs.  The Commissioner bears the burden of showing that the requesting spouse had actual knowledge, when signing the return, of any item giving rise to the deficiency.  Sec. 6015(c)(3)(C); sec. 1.6015-3(c)(2)(i), Income Tax Regs.

### 3. Judicial Review Under Section 6015(e)

Under section 6015(e), the requesting spouse may petition this Court to review a denial of relief from joint and several liability from the earlier of (1) the date that the Secretary mails to the requesting spouse a final determination letter or (2) the date which is six months after the date that the requesting spouse elected relief under section 6015(b) or (c) or requested relief under section 6015(f).  See sec. 6015(e)(1)(A)(i); sec. 1.6015-7(b), Income Tax Regs.  The requesting spouse

---

[6]Relief is also unavailable in certain situations involving fraud.  See sec. 6015(c)(3)(A)(ii), (d)(3)(C).

[*12] must petition the Court within 90 days after the date on the final determination letter.  See sec. 6015(e)(1)(A)(ii); sec. 1.6015-7(b), Income Tax Regs.  We apply a de novo standard and scope of review to a requesting spouse's election under section 6015(b) or (c) or request for relief under section 6015(f).  See Wilson v. Commissioner, 705 F.3d 980, 989, 994 (9th Cir. 2013), aff'g T.C. Memo. 2010-134; Porter v. Commissioner, 132 T.C. 203, 210 (2009).

We have jurisdiction in this case under section 6015(e) because petitioner petitioned this Court within 90 days of receiving a final notice of determination with respect to his request for relief under section 6015.  See sec. 6015(e)(1)(A)(ii); sec. 1.6015-7(b), Income Tax Regs.

B.      Whether Res Judicata Bars Petitioner's Section 6015(c) Claim

When a court of competent jurisdiction enters a final judgment on the merits of a cause of action, the doctrine of res judicata, if properly and timely invoked, binds the parties to the judgment as to all matters that were or could have been litigated and decided in the proceedings.  See Commissioner v. Sunnen, 333 U.S. 591, 597 (1948); Hemmings v. Commissioner, 104 T.C. 221, 231-232 (1995); Jefferson v. Commissioner, 50 T.C. 963, 966-967 (1968).  The doctrine promotes judicial economy by precluding repetitious lawsuits.  See Commissioner v. Sunnen, 333 U.S. at 597; Gustafson v. Commissioner, 97 T.C. 85, 91 (1991).

[*13] Federal income taxes are determined annually, with each year being a separate cause of action. Res judicata is applied to bar subsequent proceedings involving the same tax year. Commissioner v. Sunnen, 333 U.S. at 597-598. Common law principles of res judicata generally bar a party to a prior proceeding for the same tax year from seeking relief from joint and several liability regardless of whether the party raised the claim in the prior proceeding. Vetrano v. Commissioner, 116 T.C. 272, 280 (2001). However, because res judicata is an affirmative defense that must be pleaded in the answer, respondent bears the burden of proving that petitioner's section 6015(c) claim is precluded under the doctrine of res judicata. See Rules 39, 142(a); Calcutt v. Commissioner, 91 T.C. 14, 20-21 (1988).

Section 6015(g)(2) limits the common law doctrine of res judicata as it applies to claims for relief under section 6015. Under section 6015(g), res judicata bars a taxpayer from requesting relief from joint and several liability if (1) such relief was an issue in the prior proceeding, or (2) the Court decides that the taxpayer participated meaningfully in the prior proceeding. Sec. 6015(g)(2); see Koprowski v. Commissioner, 138 T.C. 54, 65 (2012); Deihl v. Commissioner, 134 T.C. 156, 161 (2010); Vetrano v. Commissioner, 116 T.C. at 278; sec. 1.6015-1(e), Income Tax Regs. Petitioner bears the burden of proving that he did

[*14] not participate meaningfully in the prior litigation within the meaning of section 6015(g)(2). See Deihl v. Commissioner, 134 T.C. at 162; Monsour v. Commissioner, T.C. Memo. 2004-190, 88 T.C.M. (CCH) 144, 152 (2004).

Petitioner contends that res judicata should not preclude his section 6015(c) claim because he did not specifically plead or otherwise request relief under section 6015(c) in his 2005 petition and he was ineligible for relief under section 6015(c) at that time.

Petitioner's 2004 Form 8857 is not in the record. Petitioner's 2005 petition, filed June 27, 2005, does not invoke section 6015(c) or allege that petitioner and Ms. Santa were separated at that time. The order of dismissal and decision in the 2005 Tax Court case is dated May 3, 2006.

Respondent contends that several of petitioner's statements show that he was eligible for relief under section 6015(c) during the pendency of the 2005 Tax Court case. In a letter dated May 10, 2008, petitioner wrote that "[w]e have been separated since 2003 and finally divorce[d]." On petitioner's 2008 Form 8857 he stated that he had been married to and living apart from Ms. Santa since May 1, 2002 and that he had been divorced from Ms. Santa since May 17, 2008. In his 2009 petition, petitioner stated that "[w]e were separated in 2002 but filed jointly". However, petitioner testified that his relationship with Ms. Santa was "off and on"

**[*15]** in 2002, and Ms. Santa stated in her divorce petition, filed in the Minnesota district court, that she separated from petitioner on July 21, 2006.

On brief petitioner explains his previous statements that he separated from Ms. Santa in 2002 or 2003 by stating that he and Ms. Santa had lived together sporadically since that time and were thus not living apart within the meaning of section 6015(c) during the pendency of the 2005 Tax Court case. Additionally, petitioner's contention that he and Ms. Santa were not living apart within the meaning of section 6015(c) is supported by Ms. Santa's statement that she separated from petitioner on July 21, 2006. Other than petitioner's own statements, which we find to be inconclusive, respondent has introduced no evidence showing that petitioner and Ms. Santa were separated for 12 months at any time before the entry of decision in the 2005 Tax Court case. See sec. 6015(c)(1), (3)(A)(i).

In Deihl v. Commissioner, 134 T.C. at 166, we held

> that for purposes of section 6015(g)(2), an election under section 6015(c) shall not be deemed to have been an issue in a prior proceeding where the requesting spouse's original request for relief under section 6015 did not specifically invoke section 6015(c) and the requesting spouse was ineligible to make an election under section 6015(c) at the time * * *

**[\*16]** Like the taxpayer in <u>Deihl</u>, petitioner did not specifically invoke section 6015(c) in his 2005 petition, and respondent has not shown that petitioner was eligible to elect relief under section 6015(c) when he first requested relief under section 6015 and when he filed his 2005 petition.

Because respondent has neither shown that section 6015(c) was in issue in the 2005 Tax Court case nor shown that petitioner was eligible to elect relief under section 6015(c) during the pendency of that case, respondent has failed to show that petitioner litigated, or could have litigated, his claim for relief under section 6015(c) in the 2005 Tax Court case. Accordingly, we conclude that section 6015(g)(2) does not bar petitioner from asserting his claim for relief under section 6015(c) in this proceeding. <u>See</u> <u>Commissioner v. Sunnen</u>, 333 U.S. at 597; <u>Hemmings v. Commissioner</u>, 104 T.C. at 231; sec. 1.6015-1(e), Income Tax Regs. (res judicata bars relief under section 6015 only where section 6015 relief was at issue in the prior proceeding or "the requesting spouse meaningfully participated * * * <u>and could have raised relief under section 6015</u>" in the prior proceeding (emphasis added)).

C. <u>Petitioner's Claim for Relief Under Section 6015(c)</u>

The parties agree that petitioner is eligible to elect relief under section 6015(c) because he and Ms. Santa divorced on May 17, 2008. <u>See</u> sec.

[*17] 6015(c)(3)(A)(i).  The parties also agree that the funds that Ms. Santa

withdrew from the profit-sharing account and her unreported wages are properly

allocable to her.  See sec. 6015(d)(3)(A).  The parties disagree, however, as to

whether petitioner actually knew that Ms. Santa withdrew the funds from the

profit-sharing account when he signed the 2002 return.  See sec. 6015(c)(3)(C).

Respondent contends that petitioner knew that Ms. Santa had withdrawn the

funds from the profit-sharing account when he signed the 2002 return because Ms.

Santa had deposited the proceeds into a joint account that she shared with

petitioner.[7]  However, respondent has introduced no evidence to support his

contentions.[8]  Moreover, petitioner credibly testified that he maintained his own

---

[7]Although we asked the parties to brief the merits of petitioner's claim for
relief under sec. 6015, respondent failed to address this issue in his opening brief.
We could treat respondent's failure to address petitioner's claim for relief under
sec. 6015 in his opening brief as a concession or abandonment of the issue.  See
Rules 123(a), (b), 151(e)(5); Lunsford v. Commissioner, 117 T.C. 183, 187 n.6
(2001); Misle v. Commissioner, T.C. Memo. 2000-322, 80 T.C.M. (CCH) 518,
530 (2000).  We choose, instead, to decide the issue on the merits.  See, e.g.,
Stanwyck v. Commissioner, T.C. Memo. 2012-180, 103 T.C.M. (CCH) 1955,
1957 (2012); AmeriSouth XXXII, Ltd. v. Commissioner, T.C. Memo. 2012-67,
103 T.C.M. (CCH) 1324, 1327 (2012).

Additionally, respondent never addressed the issue of whether petitioner
knew that Ms. Santa had unreported wage income when he signed the 2002 return.
We conclude that respondent conceded this issue.

[8]At trial petitioner's counsel objected to the introduction of any out-of-court
(continued...)

[*18] bank account during 2002 and that he had no knowledge of Ms. Santa's use of any particular bank account or accounts. We hold that petitioner has satisfied all requirements for relief under section 6015(c) on the portion of the 2002 deficiency allocable to Ms. Santa under section 6015(d)(3)(A) and that respondent has failed to prove that petitioner knew of Ms. Santa's omitted income when he signed the return. See sec. 6015(c)(3)(C); sec. 1.6015-3(c)(2)(i), Income Tax Regs.

II.     Review Pursuant to Sections 6320 and 6330(d)

Section 6321 imposes a lien on all property and property rights of a taxpayer liable for taxes where a demand for the payment of the taxes has been made and the taxpayer fails to pay. The Internal Revenue Service is authorized to file an NFTL with respect to taxpayers who have outstanding tax liabilities and fail to pay after notice and demand. Sec. 6323. Section 6320(a) requires the

---

[8](...continued)
statements of Ms. Santa appearing in the administrative record. Respondent's counsel conceded that any such statements would be hearsay. Accordingly, we admitted the administrative record into evidence subject to petitioner's hearsay objection. See Fed. R. Evid. 802, 803, 804, 807. Nevertheless, respondent relies on this hearsay evidence from the administrative record in his reply brief. We reject respondent's attempt to rely on hearsay evidence.

[*19] Secretary[9] to send written notice to the taxpayer of the filing of an NFTL and of the taxpayer's right to an administrative hearing on the matter. The conduct and the scope of section 6320 hearings are governed by section 6330(c), (d) (other than paragraph (2)(B)), (e), and (g). Sec. 6320(c).

At the hearing a taxpayer may raise any relevant issue, including appropriate spousal defenses, challenges to the appropriateness of the collection action, and collection alternatives, such as an offer-in-compromise or an installment agreement. Sec. 6330(c)(2)(A). The taxpayer is precluded, however, from raising an issue at a section 6320 hearing if the issue was raised and considered at a previous administrative or judicial proceeding and the taxpayer participated meaningfully in that proceeding. Sec. 6330(c)(4); Swanson v. Commissioner, 121 T.C. 111, 118 (2003). Following the hearing the Appeals Office must issue a notice of determination regarding the validity of the NFTL.

Pursuant to sections 6320 and 6330(d)(1), we have jurisdiction to review the Appeals Office's determination. See Murphy v. Commissioner, 125 T.C. 301, 308 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006). Where, as here, the underlying tax liability is not properly at issue, we review the administrative determination of the

---

[9]The term "Secretary" means the Secretary of the Treasury or his delegate. Sec. 7701(a)(11)(B).

**[\*20]** Appeals Office for abuse of discretion. Lunsford v. Commissioner, 117 T.C. 183, 185 (2001); Sego v. Commissioner, 114 T.C. 604, 610 (2000); Goza v. Commissioner, 114 T.C. 176, 182 (2000). In reviewing for abuse of discretion, we must uphold the Appeals Office's determination unless it is arbitrary, capricious, or without sound basis in fact or law. See, e.g., Murphy v. Commissioner, 125 T.C. at 320; Taylor v. Commissioner, T.C. Memo. 2009-27, 97 T.C.M. (CCH) 1109, 1116 (2009); see also Keller v. Commissioner, 568 F.3d 710, 716 (9th Cir. 2009) ("'Abuse of discretion occurs when a decision is based on an erroneous view of the law or a clearly erroneous assessment of the facts.'" (quoting Fargo v. Commissioner, 447 F.3d 706, 709 (9th Cir. 2006))), aff'g in part T.C. Memo. 2006-166.

Because we conclude that petitioner is entitled to relief under section 6015(c) and petitioner raised no other issues in his petition, we need not decide whether the Appeals Office otherwise erred in sustaining the filing of the NFTL.

We have considered the parties' remaining arguments and, to the extent not discussed above, conclude that those arguments are irrelevant, moot, or without merit.

**[\*21]** Because it is unclear whether any portion of the outstanding liability is attributable to petitioner and to reflect the foregoing,

Decision will be entered under

Rule 155.
