# United States Tax Court

T.C. Memo. 2025-110

CRYSTAL R. VETTEL,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

_____

Docket No. 18229-22.                                       Filed October 22, 2025.

_____

*John A. McWilliams* and *Ryan P. Watson*, for petitioner.

*Britton G. Wilson*, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

PARIS, *Judge*: Petitioner seeks review pursuant to section 6015(e)(1) [1] of respondent's determination with respect to her request for relief from joint and several liability (innocent spouse relief) under section 6015(b), (c), or (f) for 2006, 2007, 2008, 2009, 2010, and 2014 (years at issue) with respect to joint federal income tax returns that she filed with her spouse. The issues for decision are (1) whether petitioner's claim is barred by res judicata and (2) if not, whether petitioner is entitled to innocent spouse relief pursuant to section 6015(b), (c), or (f) for the understatements of tax for the years at issue. Because the Court answers the first issue in the affirmative, we do not address the second issue.

---

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, regulation references are to the *Code of Federal Regulations*, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure.

[*2]                          FINDINGS OF FACT

I.    *Background*

Petitioner resided in Nebraska when she filed the Petition. She and her husband, David Vettel, married in 1978 and remained married when this case was tried.

Petitioner graduated from high school in 1977 and did not attend college. She was primarily employed at banks as a teller or running the proof machine. Following the birth of her first child in 1982, petitioner left her employment, returning part time once her children were school aged. Petitioner worked part time at a bank in Illinois from 1993 until approximately 1999, at which time she transitioned back to full-time employment. Beginning in approximately 2010, petitioner worked as a receptionist at a dermatologist's office.

II.   *Mr. Vettel's Business Activities*

A.    *Grain Systems, Inc.*

Mr. Vettel spent his career in the agricultural field, initially working in product design and application but later moving to sales and business development. He worked his way up from an entry level position to regional domestic management before moving into international sales. In 1993 he began working for the international division of Grain Systems, Inc. (GSI), where he served as vice president of international activity for the company's grain division. He was eventually promoted to president of the international division and later acquired an ownership interest in GSI.

Mr. Vettel's work focused on the sale of equipment for the movement and storage of grain. His work required frequent international travel, primarily to meet with clients or potential clients, pursue new business opportunities, or to attend trade shows. By the late 1990s significant business opportunities emerged in Eastern Europe, including Russia, Ukraine, Hungary, Bulgaria, and Romania, and Mr. Vettel began traveling to those countries frequently.

Mr. Vettel's ownership interest in GSI yielded a significant return when GSI was acquired by another company in 2004 or 2005. Pursuant to the terms of the sale, Mr. Vettel was permitted to reinvest $250,000 of the proceeds of the sale into the newly formed company, which he did. When the company changed hands again in 2007, Mr. Vettel received

[*3] proceeds of approximately $5 million. The Vettels reported these amounts on their tax returns for the respective years.

B.    *International Business Ventures*

At some point around 2000, Mr. Vettel and Sam Moualla, another GSI employee, went into business together on a GSI dealership in Ukraine. They established Grain Systems of Ukraine (GSU), which focused on the sale of large-scale equipment, such as grain elevators, and another entity, Farm Agro, which dealt with smaller sales, such as farm dryers. Mr. Vettel did not contribute any startup capital for GSU.

GSU was a success and generated substantial income for Mr. Vettel and Mr. Moualla in the ensuing years. Petitioner did not know the specifics of Mr. Vettel's work with GSU, and Mr. Vettel generally did not discuss his work with her. Mr. Vettel did not report the income from GSU on the joint tax returns he filed with petitioner for the years at issue.

C.    *Mr. Vettel's Foreign Bank Account*

Mr. Vettel's proceeds from GSU were not brought into the United States but instead were deposited into a foreign bank account at Banca della Svizzera Italiana (BSI SA), a bank in Switzerland. With the assistance of representatives from BSI SA, Mr. Vettel created a nominee entity, Wanstead International, LTD, based in Belize, to hold title to the BSI SA account. Mr. Vettel had no connection with Belize, but he did not question why a Belize company would need to be involved with his BSI SA account. Nor did he disclose the existence of the BSI SA account or of Wanstead International to petitioner.

Mr. Vettel allowed BSI SA to invest the funds deposited in his account. The Vettels did not report the income from these investments on their tax returns for the years at issue. The income generated from these investments remained in the BSI SA account until Mr. Vettel closed the account in 2011, transferring the funds, approximately $1.1 million, first to a Cypriot corporation called SBA Grain, then ultimately to a Turkish corporation called Grain Systems Management. Mr. Vettel testified that he and Mr. Moualla intended to pursue business opportunities in Turkey and Chad, but the projects never materialized. Mr. Moualla eventually bought out Mr. Vettel's interest for $454,000.

**[\*4]** III.  *Tax Returns and Prior Deficiency Case*

A.  *Tax Returns*

The Vettels filed a joint federal income tax return for each of the years at issue. On their timely filed returns, they reported the following:

| Year | Adjusted Gross Income | Total Tax |
|------|----------------------|-----------|
| 2006 | $110,231 | $9,357 |
| 2007 | 3,858,920 | 1,141,123 |
| 2008 | 254,399 | 49,176 |
| 2009 | 199,628 | 35,647 |
| 2010 | 248,881 | 26,601 |
| 2014 | 93,555 | 9,461 |

The Vettels did not report income from BSI SA or gross receipts from GSU on any of the originally filed returns for the years at issue. On Schedule B, Interest and Ordinary Dividends, attached to each of their tax returns for tax years 2006, 2007, 2008, 2009, and 2010, the Vettels checked "No" in response to whether, during the taxable year, they had "an interest in or a signature or other authority over a financial account in a foreign country, such as a bank account, securities account, or other financial account."

B.  *Offshore Voluntary Disclosure Program*

As referenced above, the Vettels' income tax returns failed to report Mr. Vettel's income from the BSI SA account received for 2006, 2007, 2008, 2009, and 2010, and gross receipts from GSU for 2006, 2007, 2008, 2010, and 2014. In April 2014 Mr. Vettel received a letter from BSI SA advising him that it had entered into the so-called Swiss Bank Program[2] and providing Mr. Vettel the option of receiving information about the Internal Revenue Service (IRS) Offshore Voluntary Disclosure Program (OVDP).

---

[2] On August 29, 2013, the U.S. Department of Justice and the Swiss Federal Department of Finance issued a joint statement announcing the "Swiss Bank Program" for Swiss banks to resolve any culpability or liability related to their cross-border business. On December 24, 2013, BSI SA submitted a Letter of Intent to enter the Swiss Bank Program. BSI SA ultimately entered into a nonprosecution agreement and agreed to pay $211 million in penalties.

[*5]   On September 10, 2014, the Vettels, through their attorney David Reid, submitted a disclosure package to the OVDP. The disclosure package included amended returns for 2006, 2007, 2008, 2009, and 2010, reflecting a total of $1,862,094 in unreported income for those years.

The Vettels' case was assigned to a revenue agent who conducted an investigation until October 2016. On August 5, 2016, Mr. Reid sent a letter expressing the Vettels' wish to opt out of the OVDP. The letter alleged that Mr. Vettel had been misled about his tax obligations and that petitioner had no knowledge of the BSI SA account and took the position that, under those circumstances, the miscellaneous offshore penalty was excessive. Accordingly, the Vettels requested that their case be handled through the standard audit process. The Vettels' opt-out request was approved on November 15, 2016.

C.   *Examination*

Following the Vettels' opt-out of the OVDP, examination of their tax returns was reassigned to Revenue Agent Elizabeth Urtecho. As part of the investigation of the Vettels' tax returns, she conducted group interviews on August 18 and October 6, 2017. These group interviews included petitioner, Mr. Vettel, Mr. Reid, and the Vettels' return preparer.

At the conclusion of the examination, Revenue Agent Urtecho determined that the Vettels had failed to report income from BSI SA and gross receipts from Mr. Vettel's foreign entity GSU for each of the years at issue, resulting in understatements of income tax. A Notice of Deficiency was issued to the Vettels on June 21, 2019, determining deficiencies in tax as follows:

| Year | Deficiency | § 6663 Fraud Penalty | § 6662 Accuracy-Related Penalty |
|------|-----------|---------------------|--------------------------------|
| 2006 | $200,967 | $150,725.25 | — |
| 2007 | 134,282 | 100,711.50 | — |
| 2008 | 25,724 | 19,293.00 | — |
| 2009 | 13,360 | 10,020.00 | — |
| 2010 | 282,513 | 211,884.75 | — |
| 2014 | 9,571 | — | $1,914.20 |

The Notice of Deficiency determined the fraud penalties against Mr. Vettel only and not petitioner. As an alternative position, the Notice of

[*6] Deficiency determined accuracy-related penalties pursuant to section 6662(a) for tax years 2006, 2007, 2008, 2009, and 2010.

D. *Prior Tax Court Case*

On September 16, 2019, the Vettels timely filed a petition with this Court, assigned docket No. 16988-19 (deficiency case). Initially the Vettels were jointly represented by Mr. Reid, who signed the petition and the reply on behalf of petitioner and Mr. Vettel. While the deficiency case was ongoing, the parties to that case began to negotiate a settlement with the IRS Independent Office of Appeals (Appeals). Bruce Schreiner, a certified public accountant, worked with Mr. Reid during these negotiations. As the discussions with Appeals progressed, the Vettels became increasingly dissatisfied with Mr. Reid's representation, and Mr. Reid withdrew from representation of the Vettels in August 2020. On the recommendation of Mr. Schreiner, the Vettels engaged attorney William Lindsay, Jr., to represent them before Appeals. Like Mr. Reid before him, Mr. Lindsay jointly represented Mr. Vettel and petitioner.

Mr. Schreiner and Mr. Lindsay remained the Vettels' representatives throughout the negotiations with Appeals, though neither formally made an appearance before the Court on their behalf. The parties eventually reached a settlement, and a stipulated decision was entered by the Court on November 12, 2020. The stipulated decision provided as follows:

> There are deficiencies in income tax due from petitioners for the taxable years 2006, 2007, 2008, 2009, 2010, and 2014 in the amounts of $200,967.00, $134,282.00, $25,724.00, $13,360.00, $282,513.00, and $9,571.00, respectively;

> That there are penalties due from petitioner David L. Vettel for the taxable years 2006, 2007, 2008, 2009, and 2010, under the provisions of I.R.C. § 6663(a), in the amounts of $75,362.63, $50,355.75, $9,646.50, $5,010.00 and $105,942.37, respectively; and

> That there are penalties due from petitioners for the taxable year 2014, under the provisions of I.R.C. § 6662(a), in the amount of $1,914.20.

**[\*7]** Petitioner and Mr. Vettel each personally signed the proposed stipulated decision on November 7, 2020.

Respondent assessed the deficiencies, the fraud penalties for 2006 through 2010, and the 2014 accuracy-related penalty against the Vettels at various times during February and March 2021.[3] Respondent additionally assessed penalties against Mr. Vettel pursuant to 31 U.S.C. § 5321(a)(5)(C) for willfully failing to timely declare his foreign bank accounts for tax years 2006, 2007, 2008, 2009, 2010, and 2011.[4]

IV.    *Request for Relief from Joint and Several Liability*

While negotiations in the deficiency case were ongoing, petitioner, Mr. Vettel, and their representatives internally discussed the possibility of pursuing innocent spouse relief for petitioner. Mr. Schreiner first broached the topic in an email to Mr. Reid on July 13, 2020. By emails exchanged from August through October 2020, Mr. Vettel, Mr. Schreiner, and Mr. Lindsay discussed the preparation of Form 8857, Request for Innocent Spouse Relief, and reviewed drafts of their planned submission. Petitioner was copied on many of those emails and also reviewed the draft filings.

On February 20, 2021, after the stipulated decision was entered by the Court, petitioner submitted Form 8857, requesting relief from joint and several liability for tax years 2006 through 2016. On May 26, 2022, respondent issued the Notice of Determination for tax years 2006,

---

[3] At the time of trial, transcripts reflected that respondent erroneously assessed against petitioner fraud penalties that the Court's decision document had determined were not her penalties. The transcript reflected fraud penalties assessed against both petitioner and Mr. Vettel for 2008 and 2009. At the direction of the Court, respondent recognized the error, and after completion of the trial, respondent abated the fraud penalties against petitioner. On March 5, 2018, and June 5, 2019, respondent also assessed penalties of $10,000 and $30,000, respectively, for failure to disclose information with respect to Mr. Vettel's ownership of foreign financial assets pursuant to section 6038D on the Vettels' 2014 joint income tax return. The parties have stipulated that both of those penalties should be abated as to petitioner. The June 5, 2019, penalty has since been abated, and respondent's counsel represents to the Court that abatement of the March 5, 2018, penalty is in process.

[4] On April 11, 2024, the U.S. District Court for the District of Nebraska upheld the assessment of these penalties, concluding that Mr. Vettel acted willfully in failing to report his foreign bank account for the years 2006, 2007, 2008, 2009, 2010, and 2011. *See United States v. Vettel*, No. 21-cv-03099 (D. Neb. Apr. 11, 2024).

[*8] 2007, 2008, 2009, 2010, and 2014, denying petitioner's request on the grounds that the Court had issued a final decision on the matter.[5]

Petitioner timely petitioned this Court for review of the Notice of Determination.

OPINION

I.    *Relief from Joint and Several Liability*

Generally, married taxpayers may elect to file a joint federal income tax return. § 6013(a). After making such an election, each spouse is jointly and severally liable for the entire tax due for that taxable year. § 6013(d)(3). Under certain circumstances, a spouse who has made a joint return may seek innocent spouse relief under procedures set forth in section 6015 for relief from joint and several liability. Section 6015 provides a spouse with three alternatives: (1) full or partial relief under subsection (b); (2) proportionate relief under subsection (c); and (3) if relief is not available under subsection (b) or (c), equitable relief under subsection (f). Any election for innocent spouse relief under subsection (b) or (c), or equitable relief under subsection (f), may be subject to the doctrine of res judicata.

II.    *Res Judicata*

When a court of competent jurisdiction enters a final judgment on the merits of a cause of action, the doctrine of res judicata, if properly and timely invoked, binds the parties to the judgment as to all matters that were or could have been litigated and decided in the proceedings. *See Commissioner v. Sunnen*, 333 U.S. 591, 597 (1948); *Hemmings v. Commissioner*, 104 T.C. 221, 231–32 (1995). The doctrine promotes judicial economy by precluding repetitious lawsuits. *See Commissioner v. Sunnen*, 333 U.S. at 597. Federal income tax is determined annually, with each year being a separate cause of action. Res judicata is applied to bar subsequent proceedings involving the same tax year. *Id.* at 597–98. Common law principles of res judicata generally bar a party to a prior proceeding for the same tax year from seeking innocent spouse relief regardless of whether the party raised the claim in the prior proceeding. *See id.* at 597. However, because res judicata is an affirmative defense that must be pleaded in the answer, respondent bears the burden of proving that petitioners' claim is precluded under

_____

[5] Respondent's May 26, 2022, Notice of Determination did not include a determination as to petitioner's tax years 2011, 2012, 2013, 2015, or 2016.

**[\*9]** the doctrine of res judicata. *See* Rules 39, 142(a); *Koprowski v. Commissioner*, 138 T.C. 54, 59 n.3 (2012).

Section 6015(g)(2) limits the common law doctrine of res judicata as it applies to claims for innocent spouse relief. *See, e.g., Haag v. Commissioner*, T.C. Memo. 2011-87, 2011 WL 1485631, at \*6–7, *aff'd sub nom. Haag v. Shulman*, 683 F.3d 26 (1st Cir. 2012). Section 6015(g)(2) provides:

> In the case of any election under subsection (b) or (c) or of any request for equitable relief under subsection (f), if a decision of a court in any prior proceeding for the same taxable year has become final, such decision shall be conclusive except with respect to the qualification of the individual for relief which was not an issue in such proceeding. The exception contained in the preceding sentence shall not apply if the court determines that the individual participated meaningfully in such prior proceeding.

Under section 6015(g)(2), to escape the effect of res judicata from prior litigation, the requesting spouse must show (1) that her innocent spouse claim "was not an issue" in the prior proceeding, *and* (2) that she did not "participate[] meaningfully" in the prior proceeding. *Koprowski*, 138 T.C. at 65; *Deihl v. Commissioner*, 134 T.C. 156, 161 (2010); Treas. Reg. § 1.6015-1(e). The parties agree that the years at issue were the subject of the deficiency case and that petitioner did not raise the issue of innocent spouse relief in the deficiency case. Accordingly, the question before the Court is whether she participated meaningfully in that proceeding. Petitioner bears the burden of proving that she did not participate meaningfully in the prior litigation within the meaning of section 6015(g)(2). *See Harbin v. Commissioner*, 137 T.C 93, 98 (2011); *Deihl*, 134 T.C. at 162.

The phrase "meaningful participation" is not defined in section 6015(g)(2) or the accompanying regulations. The Court looks to the totality of the facts and circumstances to determine whether a taxpayer participated meaningfully in a prior proceeding. *See Harbin*, 137 T.C. at 98; *Kechijian v. Commissioner*, T.C. Memo. 2022-127, at \*11. The Court views the following factors as probative of meaningful participation: (1) exercising exclusive control over the handling of the prior proceeding; (2) having a high level of participation in the prior proceeding (e.g., signing court documents and participating in

**[\*10]** settlement negotiations); and (3) having the opportunity to raise a claim for relief from joint and several liability in the prior proceeding. *Harbin*, 137 T.C. at 98; *Kechijian*, T.C. Memo. 2022-127, at \*11.

Petitioner argues that res judicata should not apply in the present case because she did not meaningfully participate in the prior proceeding. Petitioner maintains that she exercised neither exclusive control over the handling of nor a high level of participation in the prior proceeding. Rather, she alleges that Mr. Vettel controlled the deficiency proceeding, relying on the fact that only he had personal knowledge of the BSI SA account, as well the business dealings in Turkey and Ukraine, and that he had exclusive access to the relevant documents and other materials. She states, further, that she had no contact with Mr. Reid until the first interview with Revenue Agent Urtecho and little contact with Mr. Schreiner before submitting the Form 8857. Finally, she contends that she did not have the opportunity to raise the issue of innocent spouse relief in the prior proceeding because the settlement offer "would have been lost . . . unless both David and Crystal agreed to the compromise."

Petitioner's arguments are unavailing. First, neither petitioner nor Mr. Vettel exercised exclusive control of the deficiency proceeding. While the Court accepts petitioner's claim that she was unaware of the existence of the BSI SA account or of the details of Mr. Vettel's international business dealings when the returns were filed, it is clear from the record that, by the time the Vettels initiated the deficiency case, Mr. Vettel had made petitioner aware of the matter, and she kept herself informed of the progression of the case. Nothing in the record suggests that information was withheld during the deficiency proceeding or that she was denied a voice in the decision-making process.

Furthermore petitioner did participate directly, as well. She personally signed the proposed stipulated decision on November 7, 2020, stipulating the deficiency and penalty amounts for the years at issue. That decision was entered by the Court on November 12, 2020. Petitioner does not contend, nor is there any evidence to suggest, that she was coerced into signing that document or that she did not understand its effect.

More significantly, from the commencement of the deficiency case, petitioner and Mr. Vettel were jointly represented by counsel, first by Mr. Reid, who filed the petition and the reply on the Vettels' behalf

**[\*11]** and represented them before Appeals. Following Mr. Reid's withdrawal from the case, petitioner and Mr. Vettel were represented before Appeals by Mr. Schreiner and Mr. Lindsay, who negotiated the settlement agreement that served as the basis for the stipulated decision.

The Court has previously held that section 6015(g)(2) "contemplates that participation through counsel in a prior proceeding can constitute meaningful participation that triggers res judicata and bars a subsequent innocent spouse case." *Kechijian*, T.C. Memo. 2022-127, at \*13. A lawyer who enters an appearance on behalf of a taxpayer thereafter acts for and on behalf of the taxpayer, and a taxpayer may not exempt herself from res judicata by retaining counsel to handle her deficiency case. *Id.* at \*12–13.

Although past cases have shown that it is possible for a represented taxpayer to have nonmeaningful participation in a prior proceeding, such cases are distinguishable from the present case. In *Deihl*, 134 T.C. at 165, the Court found that the taxpayer, who was represented by counsel, did not meaningfully participate in prior deficiency proceedings. The taxpayer did not sign any court documents or review the petition or the stipulations of facts in the prior cases. *Id.* at 163–64. Her attorneys did not discuss the documents with her, and she did not meet any IRS personnel or participate in any of the settlement negotiations. *Id.* at 164. The Court found that the taxpayer's husband controlled the litigation until his death, which occurred after the trial had been concluded and the Court issued its opinion. *Id.* at 165.

In *Harbin*, 137 T.C. at 98–99, the Court found that the taxpayer did not meaningfully participate in the prior proceeding where the taxpayer signed only the petition and amended petition and the taxpayer's claim was directly in conflict with the interest of his spouse. The taxpayer's attorney represented both the taxpayer and his spouse, but neither disclosed the conflict nor obtained written consent waiving the conflict. *Id.* at 99.

In contrast, petitioner knowingly and voluntarily delegated the handling of her case to her counsel, who acted on her behalf throughout the deficiency case. If petitioner limited her direct participation on account of that delegation, such a decision was a matter of choice. *Cf. Kechijian*, T.C. Memo. 2022-127, at \*14–15. She relied on her counsel to represent her interests, and in doing so, she exercised a high level of participation through the actions of her representatives, despite her not

[*12] acting directly. There is nothing in the record to indicate that she was denied access to information about the ongoing case, that Mr. Vettel or their counsel sought to exclude her from the decision-making process, or that her counsel acted against her interests. Rather, through the advocacy of her counsel, petitioner avoided liability for the section 6662(a) penalties for tax years 2006, 2007, 2008, 2009, and 2010. Indeed, the evidence shows that petitioner was typically included on emails discussing the case, and petitioner admitted that she reviewed the draft Form 8857 while the deficiency case was ongoing.

Nor does the Court accept petitioner's contention that she did not have an opportunity to raise a claim for relief in the prior proceeding. Petitioner argues that the settlement offer reflected in the stipulated decision "significantly reduced [Mr. Vettel's] penalties and would have been lost unless both David and Crystal agreed to the compromise." As a result, petitioner maintains, she was denied an opportunity to raise the issue of relief from joint and several liability in the deficiency proceeding.

Petitioner's argument is unpersuasive. First, there is no evidence in the record that the Settlement Officer conditioned the proposed settlement on petitioner's waiver of her innocent spouse claim. Mr. Vettel and Mr. Schreiner testified to the rush to sign and return the proposed stipulated decision, but these actions were driven by a belief that the documents needed to be returned as quickly as possible, lest they lose the offer, and not over concern about petitioner's potential innocent spouse claim. If petitioner's representative believed (whether accurately or not) that raising the innocent spouse issue at that time may have jeopardized the settlement offer, such strategic considerations do not amount to a lack of opportunity to raise the issue. Rather, the opportunity existed, but petitioner's counsel elected not to pursue it in view of other objectives.

Moreover, the petition in the deficiency case was filed on September 16, 2019, and discussions with the settlement officer began shortly thereafter. The proposed stipulated decision was not offered until November 2020, more than a year after the commencement of the case. At no point during those intervening months did petitioner raise the issue of innocent spouse relief, either by amending her petition with the Court or by submitting Form 8857 with respondent, and there is nothing in the record to suggest that she would have been unable to do so.

**[\*13]** Petitioner has not met her burden of showing that she did not meaningfully participate in the deficiency case. The Court holds, therefore, that her claim for relief from joint and several liability is barred by res judicata with respect to the following income tax liabilities and the 2014 accuracy-related penalty, as set forth in the stipulated decision in the deficiency case:

| Year | Deficiency | § 6662 Accuracy-Related Penalty |
|------|-----------|--------------------------------|
| 2006 | $200,967[6] | — |
| 2007 | 134,282 | — |
| 2008 | 25,724 | — |
| 2009 | 13,360 | — |
| 2010 | 282,513 | — |
| 2014 | 9,517 | $1,914.20 |

The fraud penalties for the years at issue were determined in the prior deficiency case not to be petitioner's responsibility, and respondent has abated those penalties as to petitioner. Similarly, the 2014 section 6038D penalty assessed against petitioner on June 5, 2019, has been abated, and the parties have stipulated that the 2014 section 6038D penalty assessed against petitioner on March 5, 2018, should be abated, as well. Accordingly, those penalties are no longer the subject of this request for relief from joint and several liability.

To reflect the foregoing,

*Decision will be entered for respondent.*

---

[6] The IRS account transcripts indicate that the Vettels continue to make payments toward their outstanding liabilities and that the 2006 tax liability has been paid in full.